# Baird *v.* Howison, *et al.*

### Bill to Enforce Trust.

(Decided Feb. 6, 1908.   45 South. 668.)

1. *Fraudulent Conveyances; Transfer for Fraudulent Purposes; Rights of Parties.*—Where property is transferred in fraud of creditors, both parties to the transfer participating therein, equity will not enforce a trust in favor of the grantor arising from such fraudulent transfer.

2. *Fraud; Necessity for Pleading.*—Notwithstanding the general rule that fraud, the statutes of fraud, estoppel, and like defenses must be set up by special plea or answer, unless such infirmities appear on the face of the bill, yet, equity will deny relief where the fraud is discovered from the evidence whether specially pleaded or not, where the relief prayed is to enforce a right growing out of a fraudulent contract, both parties to which are in pari delicto.

APPEAL from Jefferson Chancery Court.

Heard before Hon. ALFRED H. BENNERS.

Bill by William Baird against Allen P. Howison and others to enforce trusts. From a decree for respondents, complainant appeals. Affirmed.

Baird filed his bill against Allen P. Howison, E. J. Smyer, W. W. Lavender, F. M. Jackson, and the Braehead Coal Company for the enforcement of trusts, etc. The bill avers the following facts substantially: That Baird was an experienced coal miner, and that he and Howison entered into an agreement to locate and open a coal mine, upon the condition that Baird should prospect for and locate the mine, and that Howison should contribute the money necessary to open and develop the mine, and that they should have a one-half interest each in the mine in its entirety, when opened and located, after Howison had been paid the money expended by him in opening it, etc., with 8 per cent interest; that in November, 1899, Baird leased from the University 400 acres

of land, the description of which is particularly set out; that said lease of land was executed and delivered to Baird by the proper authorities of the University; that immediately after the execution of the lease Baird and Howison began to open and develop the coal mine on said land, which appellant superintended until about the 1st of March, 1900, when he was compelled to quit the superintendence of said mine and leave it by the said Howison or through his procurement; that in the opening and development of said mine a commissary was included, and also about 70 dwelling houses built on the land for the use of the miners and to be leased to them, from the profits of which and the rentals Baird was to have one-half; that about the 4th day of December, 1900, Howison procured Baird to assign to him the lease of said mine, and when said assignment was made Howison caused to be delivered to Baird a letter, of date December 2, 1900, in which letter Howison declared a trust in favor of Baird in and to a one-half interest in and to said mine upon the condition that is set out and expressed in said letter; that Baird, in the month of November, 1900, borrowed from said Howison the sum of $200, for which he executed promissory notes, and that this was all the money Howison ever let appellant have on his personal or private account; that the assignment of the lease of said mine was dated December 15, 1899, when in fact it was actually executed about December 4, 1900; that the recitals in said transfer of said lease are untrue, and that neither the $100 nor any other consideration was paid or received by Baird for the execution of said assignment; that it had been agreed and understood by and between said Howison and Baird while the mine was being opened and developed, that when it was fully opened and developed it should be incorporated, and that Baird and Howison should each have one-half of the cap-

[Baird v. Howison, et al.]

ital stock, to be issued and paid for by the said mine up-
on the incorporation of it; that about March 19, 1901,
Howison organized a corporation under the name of the
Braehead Coal Company, with a paid-up capital stock of
400 shares, of the par value of $100 per share, which
was paid for by transferring said mine to said corpora-
tion; that included in the sale was the commissary store
and the houses used by the miners; that Baird ratified
the sale of said mine to said corporation, together with
its equipments, stores, and houses, and elected to hold
Howison as trustee in his behalf for 200 shares of the
capital stock of said mine and corporation; that after
the organization of said corporation, and the purchase
by it of the mine, etc., Baird informed its board of
directors that he was the beneficial owner of 200 shares
of capital stock, and demanded that said stock be trans-
ferred to him by the proper officers of said corporation
and so entered upon its books, and that the officers re-
fused on demand to transfer him said shares of stock;
and that Baird stood ready to pay said Howison what-
ever amount, if any, was due him for money loaned to
Baird personally and for money advanced to open and
develop the mine, and such other sums as were or might
be chargeable as a lien on the 200 shares of capital stock.
The prayer was appropriate to the averments contained
in the bill. Baird afterwards amended the complaint by
striking out Smyer, Lavender, and Jackson, and by mak-
ing certain immaterial changes in date. He afterwards
amended by setting out the contract between him and
Howison specifically, the substance of which is given
above, and amended the prayer of the bill for an account-
ing to him by said Howison as trustee for 200 shares of
capital stock of the said corporation and of the opera-
tion of said mine by said corporation, etc., and for a re-
ceiver to operate the mine pending the decision, and that

he might pay the net earnings of the same to the said Howison in payment of any balance due said Howison.

Respondents answered, denying a partnership or agreement with Baird, and setting up that he was only the agent of Howison in procuring the lease and locating and opening said mine, and that Baird had no interest in the mine, its equipment, or the commissary. The answer further set up that, if there was any agreement, it was a verbal one, and was in reference to real estate, and was violative of the statute of frauds. The answer further set up the drunkenness of Baird and his failure to carry out the contract, and went into details as to the expenditure of Howison in and about the locating, developing, and operating of said mine.

The evidence for complainant tended to support the allegations of the bill, and that for the respondents tended to support the answer. The letter spoken of in the opinion is as follows: "Dear Lavender: Go to Braehead and take inclosed lease, and get him to turn it over to me as my agent, and date it back to within 20 or 30 days after the lease was executed. His creditors are going to make an effort to reach him at Braehead. Baird has no interest in the property until the property pays me back my money and 8 per cent interest, less what other money I have let him have on his private account; and you may read this letter to him, and then give him the letter showing how we stand. Mr. Baird must have $50 per month as living expenses as long as he had managed the property. Go without fail Monday, and execute the papers carefully, for we have no time to lose. Your friend, A. P. Howison." There was judgment for respondents, and complainant appeals.

S. C. M. AMASON, and ARTHUR L. BROWN, for appellant. Under the evidence there was a grub. stake con-

[Baird v. Howison. et al.]

tract between the parties to prospect for, locate and open
a coal mine.—22 A. & E. Ency. of Law, 232, subtitle 6,
note 1 on page 233 and authorities cited; *Berry v. Wood-
burn*, 107 Cal. 510; *Reed v. Meagher, et al.*, 9 L. R. A.
455. This vested an equal interest in each.—29 A. & E.
Ency. of Law, 896, and note 4; 22 Id. p. 227; subtitle B.
and note 6 and 7. A grub stake contract is not within
the statute of frauds, neither is a mining partnership.—
*Reed v. Meagher, supra.* A parol trust in personal prop-
erty is not obnoxious to the statute of frauds or the stat-
ute of wills.—*Moore v. Campbell*, 21 South. 353. The let-
ter written by Howison to Lavender was a sufficient
compliance and declaration of trust in favor of the ap-
pellant, for 200 shares of the capital stock.—*Howison
v. Baird*, 40 South. 94; *Wiggs v. Winn*, 29 South. 96.
Nothing was set up by way of defense of the purpose to
hinder, delay or defraud creditors in the letter written
by Howison to Lavender ·above referred to, hence, in
equity, this defense is not available at this time.—1
Ency. P. & P. pp. 882-883 and notes; 9 Id. 684; *Angel v.
Simpson*, 85 Ala. 53; *Jones v. Peevey*, 130 Ala. 269; Sec.
2156, Code 1896; 14 A. & E. Ency. of Law, 272; *Block
v. Darling*, 140 U. S. Rep. 234; *Jones v. Rahilly*, 16
Minn. 283; *Howison v. Baird, supra.* In any event, none
but the creditors of Baird should take advantage of the
fact that it was intended to hinder, delay or defraud.—
*White v. Banks*, 21 Ala. 705; *Robbins, et al. v. Wooten*,
128 Ala. 373; *Gary v. Jacobson*, 30 Am. Rep. 514; *Shea-
ly, et al. v. Edwards*, 75 Ala. 411; *Means v. Hicks*, 65
Ala. 241; *Williams v. Higgins*, 69 Ala. 517; *King v.
King, et al.*, 61 Ala. 479; *Pickett v. Pippin*, 64 Ala. 520.

W. W. LAVENDER, and TILLMAN, GRUBB, BRADLEY &
MORROW, for appellee. The letter written by Howison
to Lavender and shown to Baird is void under the stat-

ute of frauds, and as this is the declaration of trust relied on, the court will not aid Baird in the enforcement of it.—*Wilde v. Wilde*, 56 N. W. 724; *Fowler v. Scully*, 13 Am. Rep. 699; *Isler v. Brunson*, 6 Humph. 277; *May v. May*, 33 Ala. 203; *Brantley v. West*, 27 Ala. 542; *Smith v. Johnson*, 37 Ala. 633; *Clark v. Colbert*, 67 Ala. 92; *Hill v. Freeman*, 73 Ala. 200; *Patton v. Beecher*, 62 Ala. 579; *Walker v. Hill*, 22 N. J. Eq. 528. There is a fatal variance between the allegations of the bill and the proof.—*Patton v. Beecher, supra.* The evidence wholly fails to establish the averments of the bill. No contract will be specifically enforced or a trust declared which is unfair and unjust.—*Patton v. Beecher, supra; Moon v. Crowder*, 72 Ala. 79; *Derrick v. Monnette*, 73 Ala. 75; *Millner v. Stanford*, 102 Ala. 277. The original agreement rested in parol and is void under the statute of frauds.—Sec. 1041, Code 1896; *Patton v. Beecher, supra; Millner v. Stanford; supra; Jordan v. Garner*, 101 Ala. 411; *Williams v. Jones*, 77 Ala. 294; *Brock v. Brock*, 90 Ala. 86; *Oden v. Lockwood*, 136 Ala. 495. The letter was insufficient to satisfy the statute of frauds.— Authorities supra.

ANDERSON, J.—Regardless of the status of the parties prior to the execution of the transfer dated December 15, 1899, the complainant by said transfer recognized the property as belonging to Howison, and thereby released all claim or interest that he may have had in same, and must therefore rely upon the letter exhibited to him by Lavender, when he excuted the transfer, for the purpose of fixing any claim or trust upon the property in his favor. The letter was contemporaneous with the transfer, and the two documents formed but parts of the same transaction; and, conceding that the letter created a trust in favor of Baird to one-half of the prop-

erty after Howison was paid all money expended by him, with interest, and all money advanced to the complainant, it must fail, because the transfer was made to hinder and defraud the creditors of Baird, and the fraud was participated in by both parties to the contract. There can be but little doubt that the transfer was made to defraud the creditors of Baird. Howison testified that Baird told him they were after him, and in the letter to Lavender is this expression: "Go to Brachead, and take inclosed lease from the University, and get him to turn it over to me as my agent, and date it back to within 20 or 30 days after the lease was executed. His creditors are going to make an effort to reach him at Brahead." The letter containing this expression was exhibited to the complainant at the time he made the transfer, and is the document upon which he must rely to establish any claim in or to the property. Lavender testified that Baird came to see him on Sunday, before he heard from Howison, and told him he wished to make the property over, as his creditors were after him. He was eager to make it without delay, and wanted to do so that day, but was advised by Lavender to meet him at Blocton the next day, as it would not be valid if made on Sunday.

It is true the complainant attempts to show his solvency, but upon cross-examination virtually admits that he was insolvent, and that there was a judgment against him; and the conclusion is almost irresistible that he made the transfer in order to hinder and defraud his creditors. The transfer having been made for a fraudulent purpose, and the fraud having been participated in by both parties, a court of equity will leave them to the consequences of their misdeeds. The maxim applies, "In pari delicto, melior est conditio possidentis."—*Brantley v. West*, 27 Ala. 542; *Smith v. Johnson*, 37 Ala. 633;

*Clark v. Colbert,* 67 Ala. 92; *Barnes v. Starr,* 64 Conn. 136, 28 Atl. 980; 1 Pom. Eq. 398, 404; 9 Cyc. 546; *Cadmen v. Homer,* 18 Ves. 11. "The rule just quoted, that he who comes into equity must come with clean hands, is a broad one. It includes within its operation several other maxims, frequently acted upon in courts of equity, as 'Ex turpi causa non actio oritur;' 'ex dolo malo non oritur actio;' 'jus ex injuria non oritur;' 'in pari delicto, portior est conditio defendentis.' The fundamental reason upon which each of these maxims seem to rest is that a party does not come into court with clean hands to whose cause either of these maxims may be justly applied." And again the court says: "A very numerous class of cases within the same equitable doctrine is where the contract or other act is substantially a fraud upon the rights, interests, or intentions of third persons. In a case of this kind relief is refused to a plaintiff on the ground that he does not come into court with clean hands. The general rule is that parties to a contract must act, not only bona fide between themselves, but that they shall not act mala fide in respect to other persons who stand in such relation to either as to be affected by the contract or its consequences."—*Barnes v. Starr, supra;* Pom. Eq. § 881; Lord Hardwicke, in *Chesterfield v. Jansen,* 2 Ves. Sr. 156-157. Says the court in the case of *Clemens v. Clemens,* 28 Wis. 637, 9 Am. Rep. 531: "The principle or policy of the law, therefore, is to reject the suit of and reprove the plaintiff for his wrong, not to reward the defendant. The plaintiff must be punished, even though it may be at the expense of allowing the defendant, an equally guilty party, to obtain most unjust and unfair advantage for himself. The suit of the party, compelled to seek the aid of the court in order to obtain the fruits of his own fraud or wrong, must be dismissed, although it may result in unjustly giving to

[Baird v. Howison, et al.]

the other equally culpable party the entire benefit of them."

It is contended by appellant that fraud is not available as a defense to this bill, because not properly raised in the lower court. It is true that, as a general rule, fraud, the statute of frauds, estoppel, and defenses of that character, must be set up by plea or answer, unless the infirmity appears on the face of the pleading, when it can be raised by demurrer.—*Jones v. Peebles*, 130 Ala. 269, 30 South. 564; *Shakespeare v. Alba*, 76 Ala. 351. So, too, has it been held that fraudulent conveyances are binding inter partes, but void as to creditors and purchasers. There is a line of decisions holding that, where parties seek the enforcement of contracts violative of the law, contrary to public policy or founded upon an illegal or immoral consideration, and the fact appears from the evidence, whether pleaded or not as a special defense, the court will of its own motion refuse to enforce such an agreement, even should both parties consent to its enforcement.—*Wilde v. Wilde*, 37 Neb. 891, 56 N. W. 724. In the case of *Hall v. Coppell*, 7 Wall. 558, 19 L. Ed. 244, the Supreme Court of the United States uses this language: "The instruction given to the jury, that if the contract was illegal the illegality has been waived by the reconventional demand of the defendant, was founded upon a misconception of the law. In such case there can be no waiver. The defense is allowed, not for the sake of the defendant, but of the law itself. The principle is indispensable to the purity of its administration. It will not enforce what it has forbidden and denounced. The maxim, 'Ex dolo malo non oritur actio,' is limited by no such qualification. The proposition, to the contrary, strikes us as hardly worthy of serious refutation. Whenever the illegality appears, whether the evidence comes from the one side or the other, the

disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection would be attended with the vice of the original contract and void for the same reason. Wherever the contamination reaches, it destroys. The principle to be extracted from all the cases is that the law will not lend its support to a claim founded upon its violation."—*Morck v. Abel,* 3 Bos. & P. 35; *Armstrong v. Toler,* 11 Wheat. 258, 6 L. Ed. 468; *Collins v. Blanterm,* 1 Smith's Leading Cases, 630, and notes. The last cases were cited with approval by our court in the case of *Boyd v. Barclay,* 1 Ala. 34, 34 Am. Dec. 762.

There are cases in which our court has held that fraud can be waived as a defense; but those cases were where the parties were not in pari delicto and the fraud was not of such a character as to render the transaction void or violative of the law. Section 2156 of the Code of 1896 pronounces void all contracts made to hinder or defraud creditors; and section 4756 makes such conveyances a criminal offense. Of course, such contracts are valid inter partes, as the parties cannot resort to law to release themselves from the result of their own misconduct. Nor will the courts enforce such contracts at the instance of a party who has participated in the fraudulent transaction.—*Glover v. Walker,* 107 Ala. 540, 18 South. 251; *May v. May,* 33 Ala. 205; *King v. King,* 61 Ala. 479. We do not wish to be understood as holding that in certain instances and under certain circumstances fraud as a defense need not be specially pleaded; but we do hold that, where a party resorts to a court of equity to enforce a right growing out of a contract which is fraudulent and void and as to which the parties are in pari delicto, the court will deny relief when the fraud is

[Lehman, et al. v. Gunn, et al.]

discovered from the evidence, whether specially pleaded or not.

The decree of the chancery court is affirmed.

Affirmed.

TYSON, C. J., and SIMPSON and DENSON, JJ., concur.