194 So. 544

**DURR DRUG CO. v. ACREE et al.**

5 Div. 306.

Supreme Court of Alabama.

March 7, 1940.

Richard H. Cocke, of Alexander City, for appellant.

196

Harris & Brown, of Birmingham, and Sam W. Oliver, of Dadeville, for appellees.

FOSTER, Justice.

The primary question in this case is whether the complainant, Durr Drug Company, has come into a court of equity with clean hands. It is the appellant here, and the trial court held that it had no standing in court because of said maxim.

The theory is that it is in the same attitude in this respect as Gertrude A. Tucker who mortgaged the land to it, and is therefore in privity with her, since it is not claiming any rights superior to hers.

The controversy so far as here material is between appellant and Reconstruction Finance Corporation to determine which of them may exercise the statutory right of redemption of certain land from a mortgage foreclosure sale. The mortgage was made to the Federal Land Bank in 1918, and no question is presented as to it or its foreclosure. The Reconstruction Finance Corporation claims· under the Bank of Camp Hill while in liquidation. That bank claimed under a deed from Mrs. Tucker dated October 20, 1928, soon thereafter recorded.

Appellant claims under a mortgage from Mrs. Tucker dated May 17, 1937, prior to the foreclosure of the Federal Land Bank mortgage. It is subordinate to the deed under which Reconstruction Finance Corporation claims insofar as that deed is effective. Appellant claims that it is not effective because it was given as security for the debt of the husband of Mrs. Tucker to the bank.

In response to that, Reconstruction Finance Corporation points out that appellant's answer to its cross-bill declares that the deed was not given so much as security for the debt, but that it was not intended to be effective at all, but was set up· as

scenery to defraud and appease the banking department, with the secret agreement that as soon as the financial stringency of the bank was relieved, the bank was to return the title of the property to her. Upon the basis of the admissions of appellant in its answer, Reconstruction Finance Corporation claims that to permit her to come into equity and vacate the deed would be to permit her to take advantage of her own fraud, and to have unclean hands; and that since appellant occupies the position which she does in that respect its right to equitable relief is subject to the limitations under which Mrs. Tucker labors. Boone v. Byrd, 201 Ala. 562, 78 So. 958.

The trial court held that on account of the admission in appellant's answer to the cross-bill, Mrs. Tucker and appellant, who join as complainants in this suit, will not be heard on the merits of their contention, since it gives them the advantage of a positive fraud.

The principles of law and equity sought to have application are not disputed and are repeated here so as to apply them to the facts and contentions.

■ Appellant stands in privity with Mrs. Tucker and can have the deed made by her to the bank vacated as in violation of section 8272, Code, because it was given as security for her husband's debt, if she can do so in a court of equity. Evans v. Faircloth-Byrd Merc. Co., 165 Ala. 176, 51 So. 785, 21 Ann.Cas. 1164.

■ A married woman who has made such a conveyance can come into a court of equity to have it vacated on that account, and is not deprived of that right and remedy on the usual principles of waiver or estoppel. Ex parte Lacy, 232 Ala. 525 (10), 168 So. 554; Corinth Bank & Trust Co. v. Pride, 201 Ala. 683 (4), 79 So. 255; People's Bank v. Barrett, 219 Ala. 258, 121 So. 910.

■ When the owner of property makes a conveyance of it with the intent to hinder, delay or defraud his creditors, in which the grantee may participate, and who may pay no consideration for it, such owner is not permitted to come into equity and have the deed vacated against the objection of the grantee that complainant does not have clean hands. Baird v. Howison, 154 Ala. 359, 45 So. 668.

■ And the complainant will likewise be denied relief in equity on account of any unconscientious conduct connected with the controversy by which he takes advantage of his own wrong. Anders v. Sandlin, 191 Ala. 158 (3), 67 So. 684; Montgomery v. Ward, 227 Ala. 641, 151 So. 583.

■ We are not here called upon to define the power of a married woman to estop herself by her conduct to assert her ownership of land. See Russell v. Peavy, 131 Ala. 563 (2); 32 So. 492. But it has been pointed out that statutes made for her protection do not yield to other statutes having general application, when they are not in harmony. See Morris v. Marshall, 185 Ala. 179, 64 So. 312.

There was no such contention made as to the application of the maxim in Williams v. Fundaburk, 237 Ala. 30, 185 So. 383, under circumstances quite similar to those in the instant case.

It may be observed in passing that we are not dealing with a situation where a married woman concealed her ownership and induced action by others on the assumption that the property was not hers nor where the rights of innocent purchasers are involved. See People's Bank v. Barrett, supra.

■ Another theory which should have attention is based upon a principle that sometimes the court will enforce an illegal contract at the suit of one who is in pari delicto, where his guilt is not considered as equal to the higher right of the public, and he is simply the instrument by which the public is served. It is said, however, that "courts are and should be cautious in affording relief to a fraudulent debtor or other violator of the law under this exception, and should act only where it is evident that some greater public good can be subserved by action than by inaction," and "It has been held that the public good is not involved unless some person other than those engaged in the illegality is concerned or interested." 17 Corpus Juris Secundum, contracts, pages 665, 666, § 278.

And based on this principle, the Court of Appeals of New York held that when a note is given to a bank, which appears to be as security for the debt of another, but when the bank at the same time gave the maker a written agreement exempting him from liability on the note, the stability of the bank is a matter of public concern, so that the courts will not sanction any device intended to give a false appearance to a transaction or increase the apparent stability of the bank, and public policy requires its enforcement at the suit of the

bank. Its insolvency was not made a condition on which recovery was ordered in that case, Mt. Vernon Trust Co. v. Bergoff, 272 N.Y. 192, 5 N.E.2d 196, though such condition was thought to be necessary in Bank of Orland v. Harlan, 188 Cal. 413, 206 P. 75.

The theory of this exception has recently been given effect by the United States Supreme Court in Deitrick v. Greaney, 60 S. Ct. 480, 84 L.Ed. ——, February 12, 1940, on certiorari from the Circuit Court of Appeals for the First Circuit, 103 F.2d 83. The court was dealing with a federal act which prohibits the purchase by a bank of its own shares of stock. A scheme was devised for the purpose of concealing the bank's ownership of the stock by which notes were made and left with its assets as receivable to create a pretended condition to circumvent the statute. The bank had gone into liquidation. It was held that the receiver could enforce payment of the notes. See, 5 Williston on Contracts, Rev. Ed., sec. 1632.

We doubt not that this exception would be here controlling, and prohibit this married woman, or her privies, from taking advantage of a deception practiced on the bank examiner if she were sui juris.

■ But the effect is an effort by maxim of equity to deny her the right to assert the benefits of a statute, when no claim of others would be adversely affected, which was traceable directly to the effect of her deception. Russell v. Peavy, supra. If it was understood that the deed was mere scenery and was not to affect her rights, such agreement was no more than the necessary result of its execution as security for her husband's debt, which the answer in question declares was the fact. She should not be penalized for a stipulation which merely gave effect to her statutory rights. It is not a legal fraud to agree that she shall have the benefit of what the law reserves to her.

Counsel for appellees also insist that the decree denying the right of redemption to appellant and Mrs. Tucker was well founded on the evidence as to whether the deed was executed as security for the debt of the husband, insisting that it shows that it was given in satisfaction of the debt.

The decree of the court is that the evidence did not satisfactorily show that the deed was invalid. It did not specify in that connection whether reference was intended to the contention that the deed was given as security for the debt of the husband or whether it was to the contention that it was not duly witnessed or acknowledged. Presumably, it referred to the latter contention for if it was given to pay the husband's debt rather than to secure it, the maxim given effect would have no application.

■ But whatever might have been the view of the court as to whether the deed was given to secure or to satisfy her husband's debt, it is our opinion that it was given to secure it, and not to satisfy it.

The bank never asserted any claim of ownership for the two years before it went into liquidation. The liquidating agents made no claim to it for the six years while they held its affairs, and no one else did until this controversy arose some nine or ten years after the deed was executed. During all that time she was in exclusive possession of the land, paying taxes on it, and enjoying its benefits, and paying the installments on the first mortgage to the Federal Land Bank. To permit this, is a recognition of ownership by her, and wholly inconsistent with a claim of outright purchase of the land by the bank. There is no reason to discredit testimony so well corroborated.

Counsel for Reconstruction Finance Corporation also call attention to one aspect of the evidence that the mortgage to appellant was also made to secure her husband's debt, and is therefore void and furnishes no basis for the exercise of this right of redemption.

■ But no such issue was made in the pleading. This is necessary to make the defense available. Moreover, it is not available to anyone but to Mrs. Tucker and her privies. When she executed the mortgage to appellant, she thereby repudiated the deed to the bank, under which Reconstruction Finance Corporation claims. Evans v. Faircloth, supra. This left in her the right to redemption unless she thereby conveyed it to appellant. No one claims under her subsequent to the time when she executed the mortgage to appellant, and no one therefore but she has the power to dispute with appellant and the validity of her mortgage to it on such claim. She has not repudiated the mortgage, but in fact joins as complainant with appellant in an effort to redeem. And the testimony indicates that the redemption is in her interest.

We think the evidence sufficiently shows that the mortgage to appellant was to se-

cure the purchase price of a drug business sold to her and her daughter.

There was also much evidence as to the correctness of some of the items claimed by the purchasers at the foreclosure to be properly considered in computing the amount necessary to be paid to effect a redemption. But no question in that connection has been submitted for our decision on this appeal. We have treated the questions argued by counsel in their briefs.

We hold that appellant has the right to exercise the statutory right of redemption, and to that extent the decree of the trial court is reversed, and, also, to the extent that it grants such right of redemption to the Reconstruction Finance Corporation. The cause is remanded to the trial court with instructions to render a decree of redemption in favor of appellant, and to prescribe the details by which it shall be carried into effect.

Reversed and remanded, with instructions.

GARDNER, BOULDIN, and KNIGHT, JJ., concur.