Prior to September 16, 1971, Plaintiff-Appellant Mamie K. Thompson and her partner, Sylvia R. McCrary, practiced certified public accountancy in Mobile, Alabama, under the partnership name of McCrary and Thompson. On September 16, 1971, the Appellant and Ms. McCrary entered into a written contract to sell their accounting partnership to Defendants-Appellees. The "assets" to be conveyed under the contract were specifically enumerated in an eight-page appendix to the contract and included a list of clients as well as certain items of personal property. The contract also contained the following covenant not to compete:
 "A. For a period of six (6) years from October 1, 1971, the [Sellers agree] that they shall not, by themselves, whether individually or with others, directly or indirectly:
 "(1) canvass, solicit, or accept any accounting business for themselves or for any other accounting firm, from any past, present or future clients of the Buyer, or from any past clients of the Seller; "(2) give any other person, firm, or association the right to canvass, solicit, or accept any business for any accounting firm, from any past, present or future clients of the Seller or Buyer as the case may be;
 "(3) request or advise any present or future clients of Buyer to withdraw, curtail or cancel his, her or their business with Buyer;
 "(4) disclose to any other person, firm or association the names of past, present or future clients of the Buyer or Seller;
 "(5) induce, or attempt to influence, any present or future employee of Buyer to terminate his or her employment;
 "(6) engage in the practice of public accounting in Mobile County, Alabama . . . or Jackson County, Mississippi, either as an employee, proprietor, partner or stockholder."
After an initial down payment to the sellers of $10,000.00 on October 1, 1971, the Appellees agreed to make monthly payments of twenty per cent of all accounting fees paid to the Appellees by ex-clients of the McCrary and Thompson partnership.[1] These monthly payments were to commence in January of 1972 and were to continue until December 10, 1977. The contract specifically provided that ". . . no portion of the total consideration . . . is to be treated as a payment for `goodwill' . . . and that . . . with the exception of the allocation of $8,200.00 [for the physical assets] the remaining portion of all considerations . . . shall be regarded as payment for the covenant not to compete. . . ."
For several years Appellees made regular monthly payments to the Appellant as required under the terms of the contract. In June of 1976, however, with approximately one and one-half years remaining on the contract, Appellees ceased making payments to the Appellant, Mamie K. Thompson. *Page 1018 
Had Appellees continued to make regular monthly payments to Mamie K. Thompson, they estimate they would have paid her an additional $20,340.68[2] over the term of the contract. In this regard, Appellees concede they continued to make payments to Sylvia McCrary after payments to Mamie K. Thompson were ceased and that during this period of time Ms. McCrary was paid a total of $29,690.68. The Appellees further concede that their decision not to pay the Appellant the amounts due her under the contract of September 16, 1971, was based upon their contention that she was in violation of the covenant not to compete. The Appellant denied this factual allegation and asserted that she fully performed her contractual obligations.
Appellant sought damages of $25,000.00 from Appellees, who thereafter counterclaimed against Appellant. On February 1, 1980, the court granted a motion for summary judgment filed by Defendants-Appellees. A motion to reconsider was filed on February 11, 1980. On March 7, 1980, the court entered an order denying the motion to reconsider and further ordered that dismissal of the original suit also include dismissal of the counterclaim. From this order, Mamie K. Thompson appeals.
I. Restrictive Covenants Not to Compete by Professionals.
Appellant contends that the construction of § 8-1-1, Code 1975, which precludes "Professionals" from entering into covenants not to compete, is erroneous and contrary to the intent of the legislature. We cannot agree.
The initial issue presented concerns the enforceability velnon of a covenant not to compete with respect to the profession of certified public accountancy.
Section 8-1-1, Code 1975, provides that contracts in restraint of a lawful profession are void unless otherwise provided in the exceptions thereto. The provision reads as follows:
 "(a) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void.
 "(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.
 "(c) Upon or in anticipation of a dissolution of the partnership, partners may agree that none of them will carry on a similar business within the same county, city or town, or within a specified part thereof, where the partnership business has been transacted. (Code 1923, §§ 6826, 6827, 6828; Acts 1931, No. 546, p. 647; Code 1940, T. 9, §§ 22, 23, 24.)"
In Odess v. Taylor, 282 Ala. 389, 211 So.2d 805 (1968), this Court affirmed the decision of a trial judge who had refused to grant an injunction enforcing a restrictive covenant among physicians. The trial Court had ruled that the agreement was void under T. 9, § 22, Code 1940 (now codified as § 8-1-1 (a)), and that enforcement of the contract was contrary to public policy and against the best interests of the general public.282 Ala. at 393, 211 So.2d at 809.
On appeal, this Court held that the agreement in Odess, supra, was void under T. 9, § 22, Code 1940, and that the exceptions contained in § 23 (now codified at § 8-1-1 (b), Code 1975) were inapplicable to professionals. This Court reasoned as follows:
 "It is significant that the term `profession' is omitted in Section 23. Said section pertains to a `business,' to an `agent, servant, or employee' and to soliciting old `customers' of a former `employer.' *Page 1019 
 "Having included `profession' in Section 22, and omitted this term in Section 23, an affirmative inference is created that the legislature did not intend to include professions in Section 23, such interpretation being aided by resort to the maxim `expressio unius est exclusio alterius.' See Weill v. State ex rel. Gaillard, 250 Ala. 328, 34 So.2d 132; City of Birmingham v. Brown, 241 Ala. 203, 2 So.2d 305."
Odess v. Taylor, 282 Ala. at 396, 211 So.2d at 811.
Subsequent to the decision in Odess, this Court has on at least two occasions confronted the issue of restrictive covenants in the profession of accounting. In Gant v. Warr,286 Ala. 387, 240 So.2d 353 (1970), this Court ruled that a covenant not to compete contained in an agreement between partners engaged in the practice of accounting as certified public accountants was unenforceable. Specifically, the Court said:
 "Our holding in Odess v. Taylor, supra, is clearly applicable here. There can be no question that the practice of accounting by certified public accountants, as here, is a profession. Having included `profession' in § 22, and omitted this term in § 24, the omission in § 24 of `professions' indicates an affirmative inference that the legislature did not intend to include professions in § 24, such interpretations being aided by resort to the maxim, `Expressio unius est exclusio alterius.' The agreement not to compete is, therefore, void under the provisions of § 22, Title 9, supra." (Emphasis added.)
Gant v. Warr, 286 Ala. at 391, 240 So.2d 355-56.
A most recent statement of the law regarding the validity of restrictive covenants in the profession of accounting is contained in Burkett v. Adams, 361 So.2d 1 (Ala. 1978). Holding such an agreement to be unenforceable, the Court reasoned:
 "It is well settled that contracts in restraint of trade are looked upon with disfavor. Associated Surgeons, P.A. v. Watwood, 295 Ala. 229, 326 So.2d 721 (1976); Mason Corp. v. Kennedy, 286 Ala. 639, 244 So.2d 585 (1971); and Hill v. Rice, 259 Ala. 587, 67 So.2d 789 (1953). Furthermore, even a specific covenant not to compete in a profession, trade, or business is void except within the limitations imposed by Tit. 9, §§ 23 and 24, Code. Joseph v. Hopkins, 276 Ala. 18, 158 So.2d 660 (1963). Because the term `profession' is not included within §§ 23 and 24, a contract restraining the practice of a profession is void under § 22. Odess v. Taylor, 282 Ala. 389, 211 So.2d 805 (1968). Thus, should we determine that the practice of public accounting is a profession, the contract presently under consideration must be held void." (Emphasis added.)
Burkett v. Adams, 361 So.2d at 2. The Burkett Court concluded that the practice of a "public accountant" is a profession and that restrictive covenants in restraint of the practice of accounting are void regardless of whether the parties involved are certified public accountants. 361 So.2d 2-3. Here, it is undisputed that Mamie K. Thompson is a certified public accountant.
 II. Ala. Code 1975, § 8-1-1, and Section 13 of the Alabama Constitution of 1901.
Appellant argues that § 8-1-1, Code 1975, as interpreted by this Court, is violative of Article I, Section 13, of the Alabama Constitution of 1901. Such assertion lacks substance.
Section 13 makes the following guarantees:
 "That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay.
Id.
Appellant places paramount emphasis on our decision inGrantham v. Denke, 359 So.2d 785 (Ala. 1978), to support her assertions under Section 13. We find such reliance to be misplaced. In Grantham, supra, this Court decided that the legislature *Page 1020 
was precluded by Section 13 from granting immunity to a co-employee from suit by an injured fellow worker. Grantham
spoke to the preservation of an action for negligence and the prohibition against the legislative abolition of a fundamental right explicit in the terms of Section 13. Here, however, our issue is one of contractual ramifications, and the legislative prerogative to effect public policy relative to such contractual rights and obligations.
Appellant argues that inasmuch as § 8-1-1 has been held to prohibit covenants not to compete in a professional context, it operates to deprive the professional of rights and remedies he enjoyed under the common law. Likewise, according to Appellant's reasoning, a reading of Grantham shows § 8-1-1 to be unconstitutional as applied to professionals. We are disinclined to accept this contention.
Not all statutory enactments that affect common law rights are assailable by analogy to Grantham. The legislature may validly enact statutes that affect "common law rights." 15A C.J.S. Common Law § 12 (1967). Section 13 only restricts the legislature from making unreasonable, arbitrary and oppressive modifications of fundamental rights contemplated by the constitutional guarantees embodied in Section 13.
III. Ala. Code 1975, § 8-1-1, and Equal Protection.
Appellant next argues that our interpretation of § 8-1-1
violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. We are unable to find merit in this assertion.
When a State undertakes to create a legislative scheme which treats different classes of persons differently, the scheme must be shown to bear a "rational relationship" to a legitimate State objective sought to be advanced by the statute in question. Reed v. Reed, 404 U.S. 71, 75-76, 92 S.Ct. 251, 253,30 L.Ed.2d 225 (1971).
We are unable to agree that the legislature's failure to include professionals within the exception contained in § 8-1-1
(b) is not a rational scheme of classification. This Court has noted that an important distinction must be drawn between the practice of a profession and the transaction of other types of businesses. Odess v. Taylor, supra. See, also, Burkett v.Adams, supra.
IV. Pari Delicto as a Bar to this Action.
Finally, Appellant asserts that the purported illegality of the contract in question should not bar her action as she is not in pari delicto with the other parties to the contract.
As a general principle, a party may not enforce a void or illegal contract either at law or in equity. 17 C.J.S.Contracts § 272, pp. 1188-95 (1963).
The effect of the illegality of a contract is summarized inCorpus Juris Secundum:
 "No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. The rule is expressed in the maxims, Ex dolo malo non oritur actio, and In pari delicto potior est conditio defendentis. The law in short will not aid either party to an illegal agreement; it leaves the parties where it finds them."
17 C.J.S. Contracts § 272, p. 1188 (1963).
Appellant states that the general rule precluding recovery at law or equitable relief is not applicable because she was notin pari delicto with Wiik, Reimer Sweet at the time of the execution of the illegal contract herein. While there is authority to the effect that an exception to the general rule may be given to one of the parties to a void contract if he is not equally guilty with the other contracting party, it is equally apparent that this doctrine should be applied only in limited circumstances. The weight of authority indicates:
 "The cases of this character exist generally where the party asking to be relieved from the effect of an illegal agreement *Page 1021 
was induced to enter into the same by means of fraud; here he is not regarded as being in pari delicto with the other party, and the court may relieve him. The same is held where the complaining party has entered into the illegal contract through the duress or undue influence of the other."
17 C.J.S. Contracts § 274, p. 1199 (1963).
This Court has had occasion to discuss the "not in pari delicto" argument in Durr Drug Co. v. Acree, 239 Ala. 194,194 So. 544 (1940). There, the Court stated that it should be reluctant to enforce an illegal contract at the instance of one party who alleges he is not in pari delicto. Specifically, theDurr Court said:
 "It is said, however, that `courts are and should be cautious in affording relief to a fraudulent debtor or other violator of the law under this exception, and should act only where it is evident that some greater public good can be subserved by action than by inaction.'"
Durr Drug Co. v. Acree, 239 Ala. at 197, 194 So. at 546.
There is no claim of, nor do we find, any fraud, overreaching, or unconscionable behavior on the part of any of the parties. Likewise, we cannot subscribe to the contention that Appellant is within the class of persons to be afforded relief under the exception to the general rule. Accordingly, Appellant is in pari delicto and should not be afforded recovery under the illegal contract in question.
AFFIRMED.
TORBERT, C.J., and MADDOX and SHORES, JJ., concur.
BEATTY, J., concurs in the result.
[1] The Appellant and Ms. McCrary were also to receive 20% of all accounting fees paid to the Appellees by clients referred to the Appellees by them. Also, certain other provisions were made for additional payments and are set forth in detail in the contract.
[2] In arriving at this figure the estimate of the Defendant E.W. McKeen, Jr., has been added to the figure given by the other defendants. This same procedure has been followed in arriving at the total figure paid to Ms. McCrary following termination of payments to the partners, as set forth at a later point in this statement of the facts.