The United States District Court for the Northern District of Alabama, acting pursuant to Rule 18, Ala.R.App.P., has certified to this Court the following question:
 "Under Alabama law, does the doctrine of in pari delicto as an affirmative defense bar a former professional employee from recovering compensation under an agreement with his former employer, when such former professional employee directly participated in the negotiation of an unlawful non-compete provision contained within the agreement, while having knowledge that the non-compete agreement was unlawful under Alabama law, when the former employee violates the non-compete provision by entering into competition with his former employer?"
We answer the question in the affirmative and state the effect of the availability of the defense. We include as an appendix to this opinion the United States district court's order certifying this question.
F. Lee Robinson, Jr., an accountant, terminated his relationship with the firm of Boohaker, Schillaci Company, P.C. ("the firm"), and exercised his rights under a preexisting buy-sell agreement executed in 1990, supplemented by a 1994 agreement, that, among other things, called for payments to be made to him over a five-year period for the purchase of his stock. The agreements also purported to prohibit Robinson from competing in any way with the business of the firm for a five-year period. When the firm stopped making payments, citing Robinson's violation of the agreements, Robinson sued the firm and its members, claiming damages based on termination of the monthly payments; on improper changes he said the firm had made in its cash-management practices, changes that he says were to his detriment; on its failure to permit him to purchase a life insurance policy owned by the firm; and on its failure to reimburse certain expenses.
When the firm counterclaimed for an injunction and other relief, based on the noncompetition provisions contained in the agreement, Robinson moved for a partial summary judgment. It was undisputed that the 1994 agreement was drafted by Ben J. Schillaci, one of the defendants. The United States district court granted Robinson's motion, holding that the noncompetition provisions contained in the agreements were void ab initio and, therefore, that under § 8-1-1, Ala. Code 1975, those provisions were unenforceable in every respect; that the equitable defenses of equitable estoppel, in pari delicto, and unclean hands were not available to the defendants; and that the remaining provisions of the two agreements were not *Page 1094 
made invalid by the inclusion of the void noncompetition provisions.
After the court had made that ruling, its attention was called to evidence suggesting that Robinson, as the partner in charge of legal matters, might have had actual knowledge, when he entered into the agreements, that the noncompetition provisions in the agreements were unlawful and unenforceable. The district court noted that in two prior cases (Anniston Urologic Associates,P.C. v. Kline, 689 So.2d 54 (Ala. 1997), and Pierce v. Hand,Arendall, Bedsole, Greaves Johnston, 678 So.2d 765 (Ala. 1996)), this Court had refused on procedural grounds to decide whether the defense of in pari delicto could apply in litigation involving covenants not to compete. We are now squarely presented with circumstances that make it necessary to answer the question.
Alabama law strongly disfavors prohibitions that restrain one from exercising a lawful profession, and this Court has routinely refused to enforce such prohibitions. Pierce, 678 So.2d at 767
(law firm); Thompson v. Wiik, Reimer Sweet, 391 So.2d 1016,1019 (Ala. 1980) (accounting firm). This policy is reflected in § 8-1-1(a), Ala. Code 1975, which provides that "[e]very contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void." Where one has entered into an agreement that is either illegal or void, and that party is equally guilty with the other party, the doctrine of in paridelicto precludes him from obtaining relief from the courts.Thompson, 391 So.2d at 1020. This Court wrote in Thompson:
 "As a general principle, a party may not enforce a void or illegal contract either at law or in equity. 17 C.J.S. Contracts § 272, pp. 1188-95 (1963).
"The effect of the illegality of a contract is summarized in CorpusJuris Secundum:
 "`No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. The rule is expressed in the maxims, Ex dolo malo non oritur actio, and In pari delicto potior est conditio defendentis. The law in short will not aid either party to an illegal agreement; it leaves the parties where it finds them.'
"17 C.J.S. Contracts § 272, p. 1188 (1963)."
Thompson, 391 So.2d at 1020.
The doctrine of equitable estoppel is separate and distinct from the doctrine of in pari delicto. This Court discussed the doctrine of equitable estoppel in Pierce:
 "The purpose of the doctrine of equitable estoppel is to promote equity and justice in an individual case by preventing a party from asserting rights under a general rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience. Mazer v. Jackson Ins. Agency, 340 So.2d 770 (Ala. 1976). The party asserting the doctrine of equitable estoppel may not predicate his claim on his own dereliction of duty or wrongful conduct. Draughon v. General Finance Credit Corp., 362 So.2d 880, 884 (Ala. 1978)."
678 So.2d at 768. The party asserting equitable estoppel must be free from fault. An employee who is innocent of wrongdoing in the making of the agreement (i.e., is unaware of its illegality and is not a participant in the drafting) can assert the illegality of a covenant not to compete when the guilty employer asserts the employee's breach of such covenant as a defense to the employee's claim for payment under the agreement containing the covenant. The guilt of the employer precludes it from arguing under such circumstances that the employee is equitably estopped. *Page 1095 
As this Court observed in Kline, the evidence that the stockholders/physicians other than the departing employee directly participated in the drafting of the covenant not to compete precluded the employer from contending that the employee was equitably estopped from recovery because he had violated the noncompetition agreement. Kline, 689 So.2d at 58, citing Pierce,678 So.2d at 769.
One fact stated by the United States district court in its order certifying the question is that it is undisputed that one of the members of the firm drafted the agreements. Given this fact, the firm cannot assert the defense of equitable estoppel against Robinson as he seeks to recover, notwithstanding his breach of the illegal covenants not to compete. Id. As noted, the district court so held.
Against this backdrop we recast the certified question as follows:
 If a former employee violates a noncompetition provision in a buy-sell agreement drafted by the employer, under circumstances where the employee knew when he entered into the agreement that the provision was illegal and unenforceable, in an action by the former employee against the employer upon the employer's ceasing to make payments due the employee under the agreement, does the doctrine of in pari delicto prevent the employee from avoiding the consequences of his breach of the noncompetition clause by asserting its illegality?
As previously noted, we answer in the affirmative. No question of estoppel is presented when both parties are in equal fault. Moseley v. Selma Nat'l Bank, 3 Ala. App. 614, 621-22,57 So. 91, 93 (1911). Under the doctrine of in pari delicto, if both parties are in equal fault then Robinson, on the one hand, could not excuse his breach of the covenant not to compete by pointing to its illegality. On the other hand, the equally guilty firm could not obtain injunctive relief to enforce the covenant. A court will not interfere where the parties are in pari delicto, or in equal or mutual fault, but will leave them where they have placed themselves. J.C. Jacobs Banking Co. v. Campbell,406 So.2d 834 (Ala. 1981). This result stems from the maxim (cited above in the quote from Thompson) "In pari delicto potior est conditiodefendentis." Black's Law Dictionary 791 (6th ed. 1990) explains this maxim as meaning that "Where the fault is mutual, the law will leave the case as it finds it."
We do not have sufficient information to determine the extent to which the firm's obligations to Robinson imposed by the agreements may be independent of the consideration furnished by Robinson in the form of his agreement not to compete. We leave for the United States district court the question whether Robinson's guilt may defeat entirely his right to recover on the agreements.
 CERTIFIED QUESTION ANSWERED.
Hooper, C.J., and Maddox, Houston, Cook, See, Lyons, Brown, Johnstone, and England, JJ., concur.
 APPENDIX TO PER CURIAM OPINION United States District Court's Order Certifying Question
"Plaintiff F. Lee Robinson (`Robinson') asserts Alabama state law claims against the accounting firm of Boohaker, Schillaci Company, P.C. (`BSC'), and against Ben J. Schillaci (`Schillaci'), John C. Boohaker, John H. Reamey, Clyde E. Putman, and Gregory A. Grey, for breach of contract, stockholder oppression, and unjust enrichment. Defendant BSC asserts counterclaims against Mr. Robinson for breach of contract. These claims arise out of two agreements entered into by the parties on January 1, 1991, and December 31, 1994, respectively. *Page 1096 
"Mr. Robinson asserts that BSC has breached these two agreements by terminating, after June of 1996, monthly payments he was to receive under the agreements; by changing BSC's cash management practices to his detriment; by failing to allow Mr. Robinson to purchase a life insurance policy owned by the firm on Mr. Robinson's life; and by failing to reimburse expenses Mr. Robinson allegedly incurred in 1995 on the firm's behalf. BSC, in turn, asserts counterclaims for an injunction and other relief on the ground that Mr. Robinson violated, inter alia, the non-compete provisions contained within the two buy-sell agreements.
"The allegations of fact showing the nature of this cause and the circumstances out of which the question of law arises are as follows:
"Mr. Robinson is a former shareholder, officer, director, and employee of the defendant firm, BSC. While an employee of BSC, Mr. Robinson worked as a licensed certified public accountant (C.P.A.) for the firm. The business of BSC (of which all individual defendants are stockholders) is that of a certified public accounting firm or practice. At the end of 1994, Mr. Robinson decided to terminate his association with BSC and exercised his rights under the buy-sell agreement previously entered into by Mr. Robinson and the defendants in 1990, which was to be effective as of January 1, 1991. The 1991 agreement was supplemented by another agreement dated December 31, 1994. It is undisputed that although Mr. Robinson was in charge of legal matters for the firm, the 1994 agreement was actually drafted by defendant Mr. Schillaci.
"The 1991 agreement contained monetary disincentives for any partner leaving BSC to compete with the firm. The 1991 agreement, therefore, contained a non-compete clause, and defined `competition' for purposes of that agreement as follows:
 "`For purposes of this agreement, a shareholder is deemed to be competing if he does any work for clients of the Firm (clients are determined at date of shareholder's departure from the Firm) within 3 years after the date of his departure. This does not preclude the departing shareholder from doing any work for the Firm's clients if such work does not compete with the Firm in any way.'
"1991 Agreement, at 6-7.
"In the 1994 agreement, BSC promised to purchase Mr. Robinson's stock in BSC on the following terms: `THE PURCHASE PRICE of Lee's stock in BSR will be $280,000 . . . payable monthly over five years . . . at the rate of $4,666.66 per month.' 1994 Agreement, at 1. When Mr. Robinson left the firm, BSC began making these monthly payments. After eighteen months, BSC ceased making payments on the ground that Mr. Robinson had allegedly breached the 1991 and 1994 agreements.[1]
"The 1994 agreement also contained the following non-compete provision:
 "`SELLER, LEE [ROBINSON], hereby agrees not to compete in any way with the business of the Firm for a five year period beginning January 1, 1995 and ending December 31, 1999. Competing is defined as doing any work for clients of BSR (clients are determined as of the effective date of this agreement). This does not preclude Lee from doing any work for BSR's clients if such work does not compete with BSR in any way.' *Page 1097 
"1994 Agreement, at 1. BSC would not have agreed to the 1994 agreement absent Mr. Robinson's promise to refrain from doing any work for the firm's clients if such work competed with the business of the firm.
"On November 7, 1997, the Court granted Mr. Robinson's motion for partial summary judgment on BSC's counterclaims concerning the validity of the non-compete provisions contained in the 1991 and 1994 agreements. By doing so, the Court held that the non-compete provisions contained in the agreements were void ab initio and that these covenants were, therefore, unenforceable in every respect pursuant to [Ala. Code 1975,] § 8-1-1. The Court also concluded that the remaining provisions of the 1991 and 1994 container agreements were themselves not invalid by virtue of the void non-compete provisions. Finally, the Court also ruled that the defendants' affirmative, equitable defenses of equitable estoppel, in pari delicto,[2] and unclean hands were unavailable in the present action. Subsequent to this ruling, however, the Court received evidence suggesting that, as the partner in charge of legal matters for BSC, Mr. Robinson may have had actual knowledge that the non-compete agreements contained in the 1991 and/or 1994 agreements were unlawful and unenforceable.
"Based upon this `new' evidence, whether the doctrine ofin pari delicto is an affirmative defense available to the defendants to avoid their obligations to Mr. Robinson under the container agreements is fundamental to a resolution of Mr. Robinson's claims and the defenses to those claims.
[1] "[1]BSC paid Mr. Robinson approximately $84,000 of the total of $280,000 pursuant to the 1994 agreement.
[2] "[2]The Court then explained:
 "`As to the in pari delicto defense, in both [Anniston Urologic Associates, P.C. v. Kline, 689 So.2d 54 (Ala. 1997), and Pierce [v. Hand, Arendall, Bedsole, Greaves and Johnston, 678 So.2d 765 (Ala. 1996)], the Alabama Supreme Court explicitly refused to decide whether the defense applied because the defense was not properly raised on appeal. See Kline, 689 So.2d at 58; Pierce, 678 So.2d at 769.'
"Memorandum of Opinion, at 11-12 (entered Nov. 7, 1998)."