34 So.2d 132

WEILL v. STATE ex rel. GAILLARD et al.

3 Div. 479.

Supreme Court of Alabama.

Jan. 15, 1948.

Rehearing Denied March 11, 1948.

R. Luther Ingalls, Frank J. Mizell, Jr., and Jack Crenshaw, all of Montgomery, for appellant.

Thos. B. Hill, Jr., Richard T. Rives, Hill, Hill, Stovall & Carter and Hill, Hill, Whiting & Rives, all of Montgomery, for appellees.

LIVINGSTON, Justice.

Action in the nature of quo warranto instituted by the State of Alabama ex rel. M. W. Gaillard, and M. W. Gaillard, individually, against Murray Weill, individually, and Murray Weill doing business as Serv-U-Dental Laboratory. The petition alleges that relator Gaillard is the secretary of the Board of Dental Examiners of the State of Alabama.

The amended petition alleges that the defendant Murray Weill has unlawfully intruded into the practice of dentistry. The particular alleged intrusion will be set out below.

The cause was tried before a jury and, upon completion of the evidence, the trial court gave the affirmative charge without hypothesis for the State. Verdict was returned in accordance with the instruction, and a judgment entered thereon, hence this appeal by defendant Weill.

We deem it unnecessary to analyse the pleadings here. The rulings of the trial court present for review the questions herein passed upon.

In pertinent part, section 83, Title 46, Code of 1940, provides: "Any person shall be said to be practicing dentistry within the meaning of this chapter * * * who constructs or repairs himself, herself or by his or her employees or agents, a denture, bridge, orthodontic or other dental appliance on a model or cast made from an impression taken by anyone except a dentist licensed to practice by a board of examiners duly elected or appointed and only on said dentist's instructions and authorization, and the burden of proving such authorization shall be upon the person, persons or organization charged with the violation of this chapter; or who shall deliver, or cause to be delivered, in person, by carrier, mail or other method, said appliance except to a dentist licensed and qualified as above provided for."

Said section 83 also contains the following proviso: "Provided, however, that nothing in this chapter shall prevent * * * any person employed in or connected with a commercial dental laboratory from the performance of mechanical work on inanimate objects only in the construction or repair of dentures, crowns, bridges, obturators, orthodontic or other dental appliances, provided that impressions, casts or measurements for such work shall have been made or taken by a dentist licensed to practice as herein provided for, and that said construction or repair shall be done only on his or her authorization, and to be delivered only to a dentist licensed to practice as herein provided for."

Relator alleges particularly that the intrusion by Weill into the practice of dentistry consists in this:

"(d) Constructing or repairing himself, or by his agents or employees, dentures or other dental appliances on models or casts made from impressions taken by dentists duly and legally licensed to practice, but without instructions or authorization of such dentists; or

"(e) Delivering or causing to be delivered in person, by carrier, mail or other method such dentures or dental appliances referred to in subparagraph lettered (d) above to other than dentists licensed and qualified to practice dentistry as provided by law."

The evidence disclosed the following undisputed facts: Murray Weill is a dental laboratory technician. He does not claim to be a licensed dentist. In February of 1946, he opened an office in the city of Montgomery, Alabama, to engage in the business of operating a dental laboratory. Prior to that time, and since 1936, with the exception of some time spent in the Army during the late war, he was employed by the Fordham Cooperative Dental Laboratory in New York as a dental laboratory technician. For some time after opening his office in Montgomery, Weill performed his work under the instructions and authorization of licensed dentists, and delivered the finished product to the dentist, and perhaps continues to do some work in that manner. These operations did not prove entirely satisfactory, and Weill began doing certain work without instructions or authorization from licensed dentists, dealing directly with those for whom the work was

done. Without instructions or authorization from a licensed dentist, he made or constructed dentures for one Mrs. Nina Cannady, Mrs. J. H. Hay and others, and delivered said dentures directly to the parties for whom made, and charged and collected a fee for his services. He also replaced a lost tooth in a denture for one Mrs. M. M. Brown without instructions or authorization from a licensed dentist, and charged and collected a fee therefor. As to how these dentures were made, Weill testified as follows:

"Q. In making these false teeth, do you prepare a mold in which they are molded, or how do you go about making them? A. Prepare a model.

"Q. You do prepare a model? A. Prepare a model from the old denture.

"Q. Take out the old plate and use that —A. (Interposing): To prepare the model.

"Q. To prepare the model. Of course, that old plate was originally prepared by an impression? A. By a dentist at one time or another.

"Q. At one time or another; it's got to go back to an impression? A. Yes.

"Q. You couldn't very well have a denture to go in your mouth that doesn't start off with an impression taken of the gums? A. Yes, sir.

"Q. You always have to have that to start? A. Yes, sir.

"Q. This upper plate had been prepared from an impression? A. Yes.

"Q. And you put plaster of paris or something around it and make the mold? A. Yes, sir.

"Q. And you use that mold in preparing a duplicate? A. Yes, sir.

"Q. That's the kind of work you have been doing since November last year? A. Yes, sir.

"Q. And that's the kind of work you are still doing in Montgomery? A. Yes, sir.

"Q. In addition to that, you are repairing broken plates when they are brought to you by the patient? A. If they are broken. Some have come in who have to have an impression. Those I turn away.

"Q. You haven't prepared any impression of teeth? A. No.

"Q. But you have prepared plates? A. Yes, sir.

"Q. And made new teeth? A. Yes, sir.

"Q. And you do put false teeth in them, and you are still doing that kind of work? A. Yes, sir."

The foregoing testimony is uncontradicted in the record.

The following testimony of Dr. John Carter, a witness for relator also stands uncontradicted:

"Q. Doctor, we have used in our petition in this case some terms that are a little bit confusing to a layman. I want to ask you to explain those to the jury in plain and simple language. One is a denture or dental appliance, and an impression. Will you explain these terms as used in plain language? A. A denture covers the term dental, both the entire plates, artificial teeth, or removable appliance replacing some of the teeth that are lost. It can be either partial or whole removable appliance.

"Q. What is an impression, Doctor? A. The simplest way to state that, if I had some modeling clay, as we say, or some putty, and press my tooth in that, when I withdrew my tooth it would leave an impression of my tooth in this clay. Now, a denture impression is worked on that same principle. We have a metal tray that conforms to the contour of the mouth, of both upper and lower jaw. In making an impression we put some impression material, which is soft, into this tray, and then stick the tray into the mouth and carry it up to the plates. We let it harden, and take it out, and we speak of what we have, after taking an impression of the bone, as an impression.

"Q. Now, how is that impression used in making the denture? Denture includes the false teeth, and all that, as I understand it. A. After we have got the impression, then we run into this impression a substance similar to plaster of paris. If it is not plaster of paris, it is something that includes plaster of paris and something else. It is a soft substance. It goes in

your impression, and we have a little wait until it hardens. Then that produces what we call a model. From that model we prepare the impression, and that gives you a duplication of the mouth itself, of the object we took the impression of.

"Q. The impression conforms to every contour of the mouth? A. Yes, sir.

"Q. Then you form a model or mold from that impression? A. Yes, sir.

"Q. What is done in making an actual set of teeth? A Then we take some wax and go over that model that we have, and set the teeth up on this wax, and then, of course, it is gone through the process of putting it into a glass, the wax is gotten out, and then soft rubber is placed in to replace your wax, if you are making rubber denture, and it is vulcanized, carried into the vulcanizer, and after it is processed or hardened—I think it would be in about three hours—then it is taken out and polished up, and this is your finished denture."

While the foregoing is not all of the evidence presented in the court below, we think it clearly presents the questions here involved.

Appellant earnestly insists that the evidence is not sufficient to show that he practiced dentistry, as particularly alleged in relator's petition. More specifically; he argued that the burden of proof is on the relator to prove that he is practicing dentistry as defined in the Act, and charged in the petition. Or, negatively put, proof that he repaired or duplicated existing dentures without the use of any impressions, or without the use of a model or cast made from an impression, is insufficient to prove the practice of dentistry, which was alleged to consist solely of the manufacture or delivery of dentures from a model or cast made from such impression. He insists that the duplication or repair of existing dentures, without the use of any impression, or model or cast made from such an impression, does not constitute the practice of dentistry as defined by the statute.

Admittedly, Weill made dentures without instructions or authorization of a licensed dentist on a model or cast made by himself from old dentures, and which old dentures were made by a licensed dentist, and that he delivered the dentures made by himself to others than licensed dentists, and that he replaced a lost tooth in a denture without instructions or authorization from a licensed dentist.

We are asked to rule that the methods or practices pursued by appellant are not within the definition of practicing dentistry as laid down by the statute, and charged in the petition. To adopt such a rigid and literal construction of the statute forces a result which we think the legislature never intended.

In the interpretation of statutes, the legislative will is the all important or controlling factor, and it has been frequently stated, in effect, that the intent of the legislature constitutes the law. Abramson v. Hard, 229 Ala. 2, 155 So. 590, 593; 25 R.C. L. p. 960; 50 Am.Jur. p. 200, sec. 223, and cases there cited. See, also, 112 A.L.R. 1133.

Appellant insists that the statute here considered is plain and unambiguous, and requires no interpretation. But we cannot agree. In Abramson v. Hard, supra, it was said:

"As regards the question when is a statute so ambiguous as to require construction, the following statement, taken from 25 R.C.L. 959, is quite pertinent to the present statute now under consideration: 'Another occasion for construing a statute is where uncertainty as to its meaning arises not alone from ambiguity of the language employed, but from the fact that giving a literal interpretation of the words will lead to such unreasonable, unjust or absurd consequences as to compel a conviction that they could not have been intended by the legislature.'

"And again as stated at page 973: '* * * Frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular case. Hence, where

334

the whole context and the circumstances surrounding adoption of an act show a legislative intention to make an exception to the general terms of the act, the exception will be recognized by the courts. * * *'

"Again the same thought is expressed at page 1013 of the same text: 'The language of a statute must be read in a sense which harmonizes with the subject matter and the general purpose and object of the statute. In ascertaining the intent of the legislature regard must be had to the subject matter of the statute as well as its language, and its operation must be limited to its subject matter and general purpose, in the absence of a specific expression of intent and purpose to extend its operation to other subjects. * * *'

"In the case of State ex rel. Harris v. Bowden, [112 Fla. 288] 150 So. 259, 260, the Supreme Court of Florida has well stated the doctrine, to which we refer, as follows: '* * * It is the duty of the court to determine from a view of the whole law, or from other laws, in pari materia, the evident intention of the Legislature, and, when we do this, the construction may be different from the literal import of the terms employed, and, in such event, the evident intention must prevail over the literal import. In construing and applying a statute, the essential object to be effectuated is to determine the valid legislative intent, and in reaching this determination we must consider the subject upon which the law operates, its language and purpose. (Citing cases.)'

"The prime object of statutory construction 'is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject of legislation and the general object intended to be accomplished.' Alabama Pine Co. v. Merchants' & Farmers' Bank of Aliceville, 215 Ala. 66, 67, 109 So. 358, 359; Board of Education [of Jefferson County] v. State, 222 Ala. 70, 74, 131 So. 239."

▮ Another rule of statutory construction having direct application to the situation here presented is stated in the case of State ex rel. Bond v. State Board of Medical Examiners, 209 Ala. 9, 11, 95 So. 295, 297, as follows: "The history and purpose of the statutes regulating and safeguarding the practice of such professions, the importance of this branch of science, and the agency and duty of the state in relation thereto and to the general public to be, served and affected thereby, require that a liberal construction be given the statutes having application to attain the purpose of the enactment. Parke v. Bradley, supra (204 Ala. 455, 86 So. 28, 31). This is done without violating fundamental or statutory rights."

▮ Another cardinal rule of construction is that provisos following an enacting clause are to be given a rational construction in harmony with the ascertainable general purpose and intent of the enactment with a view to carrying into effect the whole purpose of the law.

▮▮ The maxim "expressio unius est exclusio alterius," though not a rule of law, is an aid to construction. It has application when, in the natural association of ideas, that which is expressed is so set over by way of contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment. A statute often speaks as plainly by inference as in any other manner, and it is a general rule that that which is clearly implied from the express terms of a statute is as much a part thereof, and is as effectual as that which is expressed. This rule applies to provisos, and under it an act which, although neither expressly forbidden nor authorized, is contrary to the plain implication of a statute, is unlawful.

▮ Another rule which we think has application here is that construction should be avoided which affords an opportunity to evade the act, and one favored which would defeat subterfuges, expediencies or evasions employed to continue the mischief sought to be remedied by the statute, or to defeat compliance with the terms, or any attempt to accomplish by indirection what the statute forbids.

▮▮ Appellant insists that he merely duplicated existing dentures. We think the distinction sought to be thus drawn is without substantial foundation.

Appellant admitted constructing dentures without instruction or authorization from a licensed dentist on models or casts prepared from existing dentures, which in turn had been made on a model or cast made from an impression taken by a licensed dentist. The dentures made by appellant were, in legal effect, the same as if the models used by him had been made from impressions taken by licensed dentists in the first instance. And they were made without instructions or authorization from a licensed dentist, and were delivered, not to a licensed dentist, but directly to the person for whom made. Dr. Carter, as well as appellant himself, testified in effect that a denture could not be made without, at some time, taking an impression of the mouth, and that all dentures must have their origin in an impression taken of the mouth or gums.

We cannot cast aside our common sense in trying to arrive at the intent of the legislature. If there are reasons for requiring that dentures made from models or casts made from an impression, be made only on the instructions or authorization of licensed dentists, the same reasons, unquestionably, require that the methods employed by appellant should likewise be employed under the instructions or authorization of licensed dentists. There is nothing in this record to indicate the contrary. The methods of procedure employed by appellant are, we think, but an effort to circumvent the plain intent of the legislature. The proviso makes it clear that the methods employed by appellant or the services performed by him as shown by the record, must be employed or performed only on the instructions or authorization of a licensed dentist, and that the finished product must be delivered to a licensed dentist. We are clear to the conclusion that such was the legislative intent. Providing, as it did, that the appellant may do work of the kind done by him, on the instructions or authorization of a licensed dentist, provided that impressions, casts, or measurements on such work shall have been made or taken by a licensed dentist; the clear implication is that the legislature intended that he could not do work otherwise.

Appellant further insists that if the statute is so framed as to prohibit him from doing the work admittedly done by him in the manner shown, then it is unconstitutional and void because it contravenes the Fourteenth Amendment to the Constitution of the United States, and Article 1, section 6 of the 1901 Constitution of Alabama.

As we understand it, appellant's argument in this regard is based upon the following reasons: that the construction or repair of dentures in a commercial dental laboratory, or by a technician, by the performance of mechanical work on inanimate objects, is a separate occupation; that the statute prescribes no standards to qualify to engage in that occupation and leaves to the arbitrary and unbridled discretion of individual dentists whether any person shall be permitted to engage in that occupation; that the right to earn a livelihood by following the ordinary occupations of life is a fundamental, natural, inherent and inalienable right, sacred and valuable, and fully protected by our fundamental laws.

This principle is of course well supported by the authorities, and is not here denied. 11 Am.Jur. sec. 336; State v. Polakow's Realty Experts, 243 Ala. 441, 10 So. 2d 461, 462. "And it must be conceded also that 'the common businesses and callings of life, the ordinary trades and pursuits which are innocent in themselves and which have been followed in all communities from time immemorial must, therefore, be free in the United States to all alike upon the same terms.' 11 Amer.Jur. sec. 336." State v. Polakow's Realty Experts, supra.

But as said in State v. Polakow's Realty Experts, supra: "This universal right is subject to the paramount right of the government as a part of the police power to impose such restrictions as the protection of the public may require. 'The right of reasonable regulation is a modification of the sweeping generalization that every person has a right to pursue any lawful calling.' 11 Amer.Jur. sec. 337."

Citation of authority is not necessary to support the proposition that under the police power the legislature may impose

336

such restrictions on the practice of dentistry as the protection of the public may require. We think that the legislature could have legally prohibited any one not a licensed dentist from doing the work authorized in the proviso, enacted as a part of section 83, supra, and it is not unusual for a statute to provide that a person performing an act under instructions and with the authority of one duly licensed to do the act is not guilty of practicing without a license. A medical student may prescribe under the supervision of a preceptor. State v. Collins, 178 Iowa 73, 159 N.W. 604. A registered student of a licensed dentist may assist his preceptor in dental operations made in the presence of and under the direct and immediate supervision of the latter. State Board of Registration & Examination in Dentistry v. Terry, 73 N.J.L. 156, 62 A. 193. An ordinary nurse may perform services under a duly qualified surgeon. In re Carpenter's Estate, 196 Mich. 561, 162 N.W. 963. A trained nurse may administer an anesthetic under the supervision of a surgeon. Frank v. South et al., 175 Ky. 416, 194 S.W. 375, Ann.Cas.1918E, 682.

The statute now considered permits acts other than those contained in the provisos to be done under the supervision of a licensed dentist, and which would, without supervision, constitute the practice of dentistry. The registration of medical technicians is provided for by the Code of 1940, and such a person is known as registered technician. Title 46, sections 151, 159, et seq., Code. However a medical technician cannot practice except under the immediate supervision of a qualified doctor of medicine. Title 46, section 165, Code.

Section 83, supra, does not recognize the operation of a commercial dental laboratory, or any part of that operation, but provides that the construction or repair of dentures and dental appliances is a part of the practice of dentistry. It does permit the dentists to avail themselves of the services of a non-dentist, and of commercial dental laboratories, provided that the work is done on the dentist's instructions and authorization, and that the completed product is delivered to the dentist. All persons not licensed to practice dentistry may engage in this work on exactly the same basis.

The problem of setting up an entirely separate occupation and providing for its licensing or for permission to engage therein, without prescribing standards, is not here presented. Here the occupation is auxiliary to the practice of dentistry, and itself constitutes that practice, unless engaged in the manner prescribed by the statute. Appellant cannot be heard to complain that no dentist was or is willing to supervise or direct his practice, and that, therefore, he was unconstitutionally deprived of the right to practice as a dental laboratory technician. See, 16 Corpus Juris Secundum, Constitutional Law, § 505; In re Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, 836.

Section 83, supra, does not deny to appellant, or anyone else so situated, any right guaranteed by the Fourteenth Amendment to the Constitution of the United States, and by Article 1, section 6 of the 1901 Constitution of Alabama.

Affirmed.

All the Justices concur.