566 So.2d 728 (1990)
WYATT SAFETY SUPPLY COMPANY, INC.
v.
INDUSTRIAL SAFETY PRODUCTS, INC.
88-1653.
Supreme Court of Alabama.
July 27, 1990.
Louis E. Braswell of Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, and Joseph S. Bird III and John E. Goodman of Bradley, Arant, Rose & White, Birmingham, for appellant.
Jerome E. Speegle, Michael Gillion and Michael R. Mills of Miller, Hamilton, Snider & Odom, Mobile, for appellee.
ADAMS, Justice.
Industrial Safety Products, Inc. ("Industrial"), filed an action against Wyatt Safety Supply Company, Inc. ("Wyatt"), alleging that Wyatt had tortiously interfered with contractual relationships between Industrial and two of its employees, Joseph Michael Lushington and Edna Faye Harridge, by inducing Lushington and Harridge to breach noncompetition agreements that they had signed. Industrial also sought to enjoin Wyatt from employing Lushington and Harridge, alleging that such employment would be in breach of the noncompetition agreements. The trial court granted Industrial's motion for a preliminary injunction, and Wyatt appeals. A.R.App.P. 4(a)(1). Industrial had a corporate predecessor that was also named Industrial Safety Products, Inc. We refer to that corporation, which underwent a reorganization described below, as "Old Industrial." We reverse and remand.
Industrial has its principal place of business in Mobile, and it is engaged in the sale of safety equipment and supplies to contractors, plants, and industry; Wyatt, which has its principal place of business in Birmingham, also engages in the sale of safety equipment and supplies.
In February 1987, both Lushington and Harridge, who were employees of Old Industrial in Pensacola, Florida, executed a covenant not to compete with Old Industrial. The covenants provided that Lushington and Harridge would not, for a period of two years following the termination of their employment, compete with Old Industrial within Mobile or within 200 miles in any direction.
Between November 1 and December 3, 1987, a series of interrelated corporate transactions involving Old Industrial took *729 place. Old Industrial entered into a "Reorganization Agreement" with Control Resources Industries, Inc. ("Control"), and ISP, Inc. ("ISP"), as well as a merger agreement with ISP. The agreements involved the creation of a shell corporation, ISP, wholly-owned by Control, into which Industrial as it then existed (Old Industrial, as we have been calling it in this opinion), was merged. ISP then changed its name back to Industrial Safety Products, Inc. (Industrial, as we call it in this opinion). Old Industrial transferred 100 percent of its stock to Control.
Lushington and Harridge became employees of Industrial, and they worked for Industrial in Pensacola until July 1989. Lushington and Harridge resigned from Industrial on July 7, 1989, and began employment with Wyatt, still in the Pensacola area, on July 10, 1989.
Wyatt contends that Industrial cannot enforce the noncompetition agreement because all such agreements are void according to Ala.Code 1975, § 8-1-1(a), except as provided in § 8-1-1(b) and (c), and Wyatt further argues that the noncompetition agreement does not fall within either of those exceptions. Section 8-1-1 provides:
"(a) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void.
"(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.
"(c) Upon or in anticipation of a dissolution of the partnership, partners may agree that none of them will carry on a similar business within the same county, city or town, or within a specified part thereof, where the partnership business has been transacted."
The noncompetition agreement at issue falls within the general prohibition of § 8-1-1(a). Accordingly, the dispositive issue is whether § 8-1-1(b) exempts the agreement from that prohibition and thus makes it enforceable. Section 8-1-1(b) explicitly provides that the successor to a purchaser of the good will of a business can enforce a noncompetition agreement against the sellers of that good will; however, § 8-1-1(b) does not state that Industrial, a successor to Old Industrial, can enforce a noncompetition agreement made by Lushington and Harridge with Old Industrial, their former employer. In other circumstances, we have addressed § 8-1-1's failure to make an explicit exception to the provision's prohibition of contracts in restraint of trade, and we examine those cases for guidance.
In Odess v. Taylor, 282 Ala. 389, 211 So.2d 805 (1968), the Court addressed a noncompetition agreement between two doctors, Dr. Odess and Dr. Taylor. Taylor entered practice with Odess and agreed not to practice within 50 miles of Birmingham if he left his association with Odess. Later, Taylor stated that Odess was treating him unfairly with regard to the practice, and he left his practice with Odess. Odess sought to enjoin Taylor from practicing medicine in Birmingham, but the trial court denied Odess's request for such a permanent injunction. In affirming the trial court's judgment, the Court wrote:
"Assignment of error No. 6 is to the effect that the lower court erred `in finding as a fact or concluding as a matter of law that the agreement between complainant (appellant) and respondent (appellee) * * * is void under Section 22 of Title 9 of the 1940 Code of Alabama (Recompiled in 1958) [now § 8-1-1(a), Code 1975] and does not come within the protection and purview of Sections 23 and 24 of the said Title 9 [now § 8-1-1(b) and (c)].'
"These sections are as follows:
"`§ 22. Contract in restraint of trade, void.Every contract by which *730 any one is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided by the next two sections, is to that extent, void.
"`§ 23. Exceptions in favor of purchaser of good will and employer. One who sells the good will of a business may agree with the buyer, and one who is employed as an agent, servant, or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof, so long as the buyer or any person deriving title to the good will from him, and so long as such employer carries on a like business therein.
"`. . . .'
". . . .
"Even a specific covenant not to compete in a profession, trade, or business is void under Section 22, supra, unless within the limited exceptions created by Section 23, supra. Joseph v. Hopkins, 276 Ala. 18, 158 So.2d 660.
"As pointed out in Parker v. Ebsco Industries, Inc., 282 Ala. 98, 209 So.2d 383, Section 23 originally applied only to the sale of the good will of a business (Section 6827, Code of 1923) but the section was amended in 1931 to extend to the relationship of employer and employee.
"The question is thus presented as to whether the legislature intended by Section 23 that one practicing a profession should be considered in the category of an employee as that term is understood in the usual trade or commercial sense.
"It is significant that the term `profession' is omitted in Section 23....
"Having included `profession' in Section 22, and omitted this term in Section 23, an affirmative inference is created that the legislature did not intend to include professions in Section 23, such interpretation being aided by resort to the maxim `expressio unius est exclusio alterius.' See Weill v. State ex rel. Gaillard, 250 Ala. 328, 34 So.2d 132; City of Birmingham v. Brown, 241 Ala. 203, 2 So.2d 305."
282 Ala. at 395-96, 211 So.2d at 810-11.
In Gant v. Warr, 286 Ala. 387, 240 So.2d 353 (1970), the Court followed its reasoning in Odess v. Taylor to hold that a "professional" was not subject to the statutory exception. The Court quoted Odess v. Taylor extensively and, consistent with its opinion in that case, wrote:
"[H]aving included `profession' in § 22 [§ 8-1-1(a)] and omitted this term in § 24 [§ 8-1-1(c) ], the omission in § 24 of `professions' indicates an affirmative inference that the legislature did not intend to include `professions' in § 24, such interpretation being aided by resort to the maxim `Expressio unius est exclusio alterius.'"
286 Ala. at 391, 240 So.2d at 356. The Court again stated this rationale in Thompson v. Wiik, Reimer & Sweet, 391 So.2d 1016, 1019 (Ala.1980) (per Jones, J., with three Justices concurring and Beatty, J., concurring in the result).
If we apply that same statutory construction, the following holding results: Although the language of § 8-1-1(b) does not explicitly allow Industrial to enforce the noncompetition agreement against Lushington and Harridge, it does explicitly provide for a buyer of the good will of a business and the buyer's successor to enforce a noncompetition agreement against the seller of the good will; accordingly, the legislature's omission of a provision that would allow Industrial to enforce the agreement against Lushington and Harridge, while the legislature specifically provided for successor purchasers of the good will of a business to be able to enforce such agreements against the seller of the good will, would indicate that the legislature did not intend to give Industrial the benefit of the § 8-1-1(b) exception to the general prohibition of such agreements. We must determine whether to adopt that rationale, and further discussion is necessary to reach that determination.
The United States District Court for the Northern District of Alabama, confronted *731 with the same issue we now address, adopted that rationale. That court held that § 8-1-1(b) does not allow a successor employer to enforce a noncompetition agreement made by an employee and a predecessor employer. In Metromedia, Inc. v. Jennings, CV 83-H-5866-NE (N.D. Ala. 1984), Jennings, who was employed by Creative Displays, Inc. ("Creative"), signed a noncompetition agreement with that corporation; that agreement purported to prevent Jennings from competing with Creative in Huntsville for two years following the termination of his employment. Creative entered into an asset-purchase agreement with Metromedia, Inc. ("Metromedia"), and all of Creative's assets were transferred to Metromedia. Jennings was employed with Metromedia for a period of time, then he resigned. Metromedia filed an action, alleging that Jennings had breached the noncompetition agreement that he had signed with Creative. Jennings did not have a contract with Metromedia.
Addressing § 8-1-1, the Court wrote:
"While the language of subsection (b) does not expressly allow a successor employer to enforce a noncompetition contract against an employee, it does specifically provide for the enforcement of such a contract by a successor to the purchaser of the good will of a business. The omission of a specific provision for successor employers, while specifically providing for successor purchasers of a business's good will, creates an affirmative inference that the Alabama Legislature did not intend to include successor employers in the subsection (b) exception to the general prohibition of such contracts. This construction rests essentially on an application of the maxim expressio unius est exclusio alterius. The Alabama Supreme Court construed the statute in much the same way and applied the same maxim in Odess v. Taylor, 282 Ala. 389, 396, 211 So.2d 805 (1968). In Odess the court held that because the word `profession' was included in the prohibition of what is now Section 8-1-1(a) but was not included in the exclusionary language of what is now Section 8-1-1(b), the Alabama Legislature intended to void all contracts restraining the practice of a profession, even those following the sale of the good will of a business or the termination of an employer-employee relationship. The Alabama court reached the same conclusion with regard to the dissolution of partnerships of professionals in Gant v. Warr, 286 Ala. 387, 240 So.2d 353 (1970)."
In addition to that reasoning, the federal court explained that the history of § 8-1-1 supported that court's construction of the provision:
"The history of Alabama Code Section 8-1-1 (b) supports the above interpretation. As originally enacted, the predecessor of Section 8-1-1(b) provided an exception only for the purchaser of the good will of a business. See Ala.Code § 6827 (1923). In 1931 Section 6827 was amended to include the employer-employee relationship. See Act of July 31, 1931, No. 546, 1931 Gen.Ala.Acts 647. After the amendment the section provided:
"`One who sells the good will of a business may agree with the buyer, and one who hires as an agent, servant, or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof, so long as the buyer or any person deriving title to the good will from him, and so long as such employer carries on a like business therein.
"Id.
"The 1940 Code of Alabama revised this section slightly by changing `hires' to `is employed.' See Ala.Code Title 9, § 23 (1940). The section remained unchanged until the 1975 Alabama Code combined Sections 22, 23, and 24 of Title 9 of the 1940 Alabama Code to form subsections (a), (b) and (c) respectively of Section 8-1-1. The origination of the provision in Section 8-1-1(b) concerning the employer-employee relationship as an addition to the language dealing with the sale of the good will of a business suggests *732 a legislative intention to treat successors in the two situations differently. Furthermore, the language of the original amendment `and so long as such employer..." which parallels `so long as the buyer or any person deriving title to the good will from him ...' even more strongly suggests an intended difference by the Alabama Legislature. This court must also note that in the fifty-two years since the Alabama Legislature enacted the amendment it has not made any change clearly to indicate that a successor employer was to be included in [the] subsection (b) exemption, although the legislature has twice revised the section."
Furthermore, we note that § 8-1-1 expresses the public policy of Alabama that contracts in restraint of trade are disfavored, "because they tend not only to deprive the public of efficient service but also tend to impoverish the individual." James S. Kemper & Co. Southeast, Inc. v. Cox & Associates, Inc., 434 So.2d 1380, 1384 (Ala. 1983), citing Robinson v. Computer Servicenters, Inc., 346 So.2d 940, 943 (Ala. 1977).
Against all this, Industrial cites Ala. Code 1975, § 10-2A-145(b)(4) and (5), and argues that as a surviving corporation to a merger, Industrial possesses by law "all rights [and] privileges" as well as all "liabilities and obligations" of the merged corporations. That section, entitled "Effect of merger or consolidation," provides:
"(b) when such merger or consolidation has been effected:
". . . .
"(4) Such surviving or new corporation shall thereupon and thereafter possess all the rights, privileges, immunities and franchises, of a public as well as of a private nature, of each of the merging or consolidating corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares, and all other choses in action, and all and every other interest of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of such corporations shall not revert or be in any way impaired by reason of such merger or consolidation.
"(5) Such surviving or new corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged or consolidated; and any claim existing or action or proceeding pending by or against any of such corporations may be prosecuted as if such merger or consolidation had not taken place, or such surviving or new corporation may be substituted in its place. Neither the rights of creditors nor any liens upon the property of any such corporation shall be impaired by such merger or consolidation."
Section 8-1-1 is specific. It addresses only contracts in restraint of trade. Section 10-2A-145(b)(4) and (5) is general and relates to the consequences of all statutory mergers or consolidations. "There is a rule of statutory construction that specific provisions relating to specific subjects are understood as exceptions to general provisions relating to general subjects." Murphy v. City of Mobile, 504 So.2d 243 (Ala. 1987); Bouldin v. City of Homewood, 277 Ala. 665, 174 So.2d 306 (1965). Accordingly, we hold that § 8-1-1 is an exception to § 10-2A-145(b)(4) and (5) and that under § 10-2A-145(b)(4) and (5) there is no right to enforce noncompetition agreements that does not exist under § 8-1-1.
Subscribing to the sound reasoning in Metromedia, Odess v. Taylor, Gant v. Warr, and Thompson v. Wiik, Reimer, & Sweet, we hold that Industrial may not enforce the noncompetition agreement against Lushington and Harridge, because the agreement violates the general prohibition of Ala.Code 1975, § 8-1-1(a), and does not fall within the exceptions of § 8-1-1(b) and (c). The legislature did not provide for employers situated as Industrial is to be able to enforce noncompetition agreements against employees situated as Lushington and Harridge are in relation to Industrial. We will not create such a right of enforcement *733 for Industrial either, especially in light of our public policy against contracts in restraint of trade. The judgment is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
MADDOX, J., concurs in the result.
ALMON, J., concurs specially.
MADDOX, Justice (concurring in the result).
I concur in the result reached, but I must strongly disagree with the holding of the majority opinion that noncompetition agreements executed by an employee with a corporate employer, which is merged into and becomes a part of a successor corporation, cannot be enforced by the successor corporation.
One of the appellant's arguments is that the noncompetition agreements contained a clause providing that "[t]his contract shall become null and void should [Industrial] as it now stands be sold to another party or change management," and that the facts of this case clearly show that Industrial was "sold" or that its management was "changed" within the meaning of this clause in the contract.
I agree with the appellant's argument on this issue. Construing the "null and void" clause of the contracts, and applying the rule that the public policy of this State is to disfavor this kind of contract, I am constrained to hold that what happened in this case constituted a "sale" or "change" of management within the meaning of those contract clauses.
I cannot agree, however, with the holding of this Court, and the holding of my learned friend Federal District Judge James Hancock in Metromedia, Inc. v. Jennings, CV83-H-5866-NE (N.D.Ala.1984) that Ala.Code 1975, § 8-1-1(b), does not permit a successor employer to enforce a noncompetition agreement made by an employee and a predecessor employer.
I find support for my position that the merger and transfer in this case constituted a "sale" within the contemplation of the parties when they executed the contract containing the "null and void" provision in this Court's case of First Alabama Bancshares, Inc. v. McGahey, 355 So.2d 681 (Ala. 1978). While not exactly the same as this case, McGahey supports my position in this case that but for the "null and void" clause, these contracts would be enforceable.
In McGahey, a bank holding company brought an action against McGahey, a former stockholder and officer of the bank, to enforce a noncompetition agreement. This Court set out the issue in that case, as follows:
"The [principal] question raised concerns whether the exchange of stock involved in a merger constitutes a `sale' of good will within the meaning of Tit. 9, § 23, Code (§ 8-1-1, Code of Ala.1975). If our answer to this question is in the affirmative, a covenant not to compete will be recognized under such circumstances. The trial [c]ourt, basing its interpretation upon federal taxing statutes, held that the merger could not be considered a `sale.' We reverse and remand.
"Title 9, § 23 [now § 8-1-1(b)], provides that:
"`One who sells the good will of a business may agree with the buyer ... to refrain from carrying on or engaging in a similar business and from soliciting old customers ... within a specified county, city or part thereof, so long as the buyer or any person deriving title to the good will from him ... carries on a like business therein.'
"We are called upon to interpret the language of this section which is an exception to the more general proposition contained in Tit. 9, § 22 [now § 8-1-1(a)], Code, that contracts in restraint of trade, are, to that extent, void. See also 54 Am.Jur.2d Monopolies, § 522."
355 So.2d at 682.
After concluding that an individual stockholder could sell the good will of a corporation in proportion to his interest in that corporation, this Court held:

*734 "Thus viewed, then, we must now determine whether, under the facts before us, there was a `sale' of good will pursuant to Tit. 9, § 23, Code. McGahey's contention that we must interpret `sale' as that term is used for federal tax purposes is without merit. Whether the transfer is taxable is immaterial to our consideration; and this for the reason that it is only the specific exclusionary provision which prevents this transfer from being taxable as a `sale or exchange.' I.R.C., §§ 354, 368(a), 1001(c). While some gain may be realized, it is merely not recognized as a taxable incident by the terms of the federal revenue code.
"McGahey's assertion that contracts in restraint of trade and employment are looked upon with disfavor is true. Tit. 9, § 22, Code; and Hill v. Rice, 259 Ala. 587, 67 So.2d 789 (1953). This, however, does not compel the interpretation of the word `sale' to mean `cash sale.' See Shelton v. Shelton, 238 Ala. 489, 192 So. 55 (1939); and Davis v. Christopher, 219 Ala. 346, 122 So. 406 (1929).
"The intent of the Legislature in passing § 23 was to protect purchasers of a business from prior entrepreneurs where the good will of that business is one of the assets purchased. Shelton, supra. We perceive no set of circumstances more illustrative of the legislative purpose than the instant case. Here, a statewide corporation merged and acquired the assets of a local banking institution. The utmost trust and personal faith is required of a banker by his customers. Obviously, then, the good will of Citizens Bank was an important asset acquired by Bancshares; and therefore, Bancshares had a legitimate interest in preventing McGahey, who has helped establish and nourish that good will, from competing locally with it. The term `sale,' as included in Tit. 9, § 23, Code, must be interpreted to include a transfer or acquisition. No less-expansive interpretation could foster the legislative intent. Indeed, because the legislature, at the time of this statute's passage, could not foresee the complexities involved in today's corporate mergers, the generic interpretation is the only reasonable solution to this situation."
355 So.2d at 682-83.
While somewhat different from the present case in its facts, McGahey shows that a noncompetition agreement can remain valid after a merger and be enforced by the successor corporation. Based on the reasoning of this Court in McGahey, I think there was a "sale" within the meaning of the "null and void" provision of the noncompetition agreements; therefore, I concur in the result reached, but the reasons given by the majority for the holding in this case, I believe, are not sound, and I take this opportunity to respectfully state my view of the law.
ALMON, Justice (concurring specially).
I agree with Justice Maddox's conclusion that the clause in the noncompetition agreements with the former Industrial Safety Products, Inc., voiding those agreements upon a sale of the company, is triggered by the sale that took place here. Prior to that sale, Melvin and Ronnie Hyer owned all of the stock of Industrial. After the sale, Control Resource Industries, Inc., owned all of the stock of the new Industrial, which had undergone a merger (with I.S.P., Inc.) and a name change (back to Industrial Safety Products, Inc.) in the process. As part of the consideration for the transaction, the Hyers received a total of six per cent of the stock of Control. The clause voiding the noncompetition agreements should be construed against its drafter, Industrial, and under such a construction this transaction should be considered a "sale" and the noncompetition agreements should be considered void.
Absent that clause, I would have serious questions about voiding the noncompetition agreements simply because of the sale of the stock of Industrial. A corporation might have as its most valuable assets valid noncompetition agreements with its key employees, but the majority's reasoning would make that company unable to merge with another corporation or otherwise transfer its assets to a successor entity. I agree that § 8-1-1(a) expresses a *735 policy of disfavoring contracts in restraint of trade, but contracting parties are entitled to rely on the exceptions found in § 8-1-1(b). The exceedingly strict construction of § 8-1-1(b) articulated by the majority is unnecessary in this case, and, as applied in other cases, might raise serious questions regarding vested rights, deprivation of property without due process of law, and impairment of contracts.