THOMAS, Judge.
Keith Rogers was employed as a registered representative of G.L.S. & Associates, Inc., and G.L. Smith & Associates, Inc. (hereinafter collectively referred to as “GLSA”), until he resigned from his employment in January 2013. Rogers solicited and effected the sale of securities for GLSA; thus, Rogers is a securities broker.[1] His employment agreement required that he be a registered representative of the National Association of Securities Dealers (“NASD”), which is now known as the Financial Industries Regulatory Agency (“FINRA”). The employment agreement also provided, among other things, that
“[Rogers] will strictly comply with the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Securities Exchange Commission, the National Association of Securities Dealers, and state securities act administrators, and the rules and regulations of all governing bodies having jurisdiction over securities activities.”
The employment agreement contained a nonsolicitation provision, which read as follows:
“WHEREAS, [Rogers] desires continued employment with [GLSA] and pay *265 ment of salary and/or commissions in accordance with the terms and conditions set forth below.
“WHEREAS, [Rogers] expressly covenants and agrees that any and all business accounts at any time or times procured, handled, or managed by [Rogers] while employed by [GLSA] are and shall be the exclusive property of [GLSA] for its exclusive benefit to the extent described under this Agreement;
“WHEREAS, [Rogers] recognizes and acknowledges that [GLSA’s] accounts and information relating to [GLSA’s] clients are valuable and unique assets of [GLSA],
“NOW, THEREFORE, in consideration of the premises and covenants contained within this Agreement, [Rogers] agrees to the following:
“1. Upon termination of employment for any reason whatsoever, [Rogers] will not, for a period of two (2) years from the date of termination directly or indirectly, either as an individual or as the agent, representative, stockholder, or employee of another or in any other manner:
“(a) Quote rates of stocks, bonds or commodities, or provide any investment counseling services, advice or other investment related services similar to those provided by [GLSA] for any person, firm or corporation residing or located within the State of Alabama or otherwise within a fifty-mile radius of Huntsville, Alabama, that is a client of [GLSA] and for which [Rogers], during the course of his or her employment, shared commissions with any other broker, agent, representative or employee of [GLSA], or otherwise directly or indirectly suggest, advise, induce or attempt to persuade any such clients of [GLSA] to discontinue any business or investment relations with [GLSA];
“(b) Divulge the names, addresses, or other information concerning the clients and accounts of [GLSA] or any other confidential information acquired during employment by [GLSA] to any person, firm, corporation, association, or other entity for any purpose whatsoever.
“(2) The provisions of this Agreement between [Rogers] and [GLSA] shall extend to any successor corporation of [GLSA], and the surviving corporation shall possess all the rights and privileges of enforcement under this Agreement.
“(3) The provisions of this Agreement shall be governed by the laws of the State of Alabama.
“(4) All of the provisions of this Agreement are distinct and severable, and if any provision shall be held illegal or void, it shall not affect the validity or legality of the remaining provisions of this Agreement.
“(5) In the event of breach of this Agreement by [Rogers], [GLSA] shall be entitled to any and all damages caused by the breach, including but not limited to litigation expenses and attorney’s fees.”
In June 2013, GLSA sued Rogers and another former employee, Kelly C. Clary, alleging that they had violated the nonsoli-citation provisions of their employment agreements by attempting to solicit clients of GLSA; GLSA attached the employment agreements executed by Rogers and Clary to its complaint. GLSA later voluntarily dismissed its claim against Clary. Rogers then moved the trial court to dismiss GLSA’s claim against him.
Rogers argued in his motion to dismiss that the nonsolicitation provision in the *266 employment agreement was unenforceable as a matter of law because being a securities broker in the business of purchasing and selling securities was a profession, which he could not be restricted from practicing under Ala.Code 1975, § 8-1-1. Section 8-1-1 reads, in pertinent part:
“(a) Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.
“(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.”
The predecessor statutes to § 8-1-1— Code 1940 (Recomp. 1958), Title 9, §§ 22-24 — were construed to permit nonsolicitation agreements between an employer and an employee in certain circumstances, unless the agreement attempted to prohibit a person from practicing a profession. See Odess v. Taylor, 282 Ala. 389, 211 So.2d 805 (1968).
“Even a specific covenant not to compete in a profession, trade, or business is void under [Ala.Code 1940 (Re-comp.1958), Title 9,] Section 22 ... unless within the limited exceptions created by [Ala.Code 1940 (Recomp.1958), Title 9,] Section 23.... Joseph v. Hopkins, 276 Ala. 18, 158 So.2d 660 [(1963)].
“As pointed out in Parker v. Ebsco Industries, Inc., 282 Ala. 98, 209 So.2d 383 [(1968)], Section 23 originally applied only to the sale of the good will of a business (Section 6827, Code of 1923) but the section was amended in 1931 to extend to the relationship of employer and employee.
“The question is thus presented as to whether the legislature intended by Section 23 that one practicing a profession should be considered in the category of an employee as that term is understood in the usual trade or commercial sense.
“It is significant that the term ‘profession’ is omitted in Section 23. Said section pertains to a ‘business’ to an ‘agent, servant, or employee’ and to soliciting old ‘customers’ of a former ‘employer.’
“Having included ‘profession’ in Section 22, and omitted this term in Section 23, an affirmative inference is created that the legislature did not intend to include professions in Section 23, such interpretation being aided by resort to the maxim ‘expressio unius est exclusio alterius.’ See Weill v. State ex rel. Gaillard, 250 Ala. 328, 34 So.2d 132 [(1948)]; City of Birmingham v. Brown, 241 Ala. 203, 2 So.2d 305 [(1941)].”
Odess, 282 Ala. at 395-96, 211 So.2d at 811.
To support his contention that he was engaged in a profession, Rogers relied on the employment agreement, which indicated that he was required to be registered with NASD, now FINRA. Rogers also pointed out that he was required to strictly comply with several federal and state statutes regulating securities and them sale. According to Rogers, his employment as a securities broker qualified as practicing a profession because of the “professional training, skill, and experience required to perform certain services [he performed]; [the] delicate nature of the services [he] offered; and the ability and need to make instantaneous decisions [in his position].” Friddle v. Raymond, 575 So.2d 1038, 1039 (Ala.1991). GLSA opposed Rogers’s mo *267 tion to dismiss. Neither party submitted any evidentiary material to support their arguments.
The trial court held a hearing at which it heard arguments of counsel. After the hearing, the trial court entered an order dismissing the complaint. In that order, it first noted that whether the occupation of securities broker was a profession was an issue of first impression; the trial court then concluded that Rogers was engaged in a profession and that the nonsolicitation provision of the employment agreement could not be enforced. GLSA filed a post-judgment motion, in which it argued that the trial court could not have determined whether Rogers was engaged in a profession without receiving evidence concerning the factors set out in Friddle. That motion was denied by operation of law, see Rule 59.1, Ala. R. Civ. P., and GLSA timely appealed to our supreme court, which transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
On appeal, GLSA argues again that the trial court erred by concluding on Rogers’s motion to dismiss that Rogers was engaged in a profession and that the non-solicitation provision of the employment agreement could not be enforced. According to GLSA, such a decision cannot properly be made on a motion to dismiss, because certain factual issues must be resolved to determine whether being a securities broker is, in fact, a profession. Rogers contends that the trial court could have determined, based solely on the facts alleged in the complaint and the accompanying employment agreement, that he was engaged in a profession.
We first note that, despite the fact that the employment agreement was attached to the complaint, the trial court dismissed the action under Rule 12(b)(6), Ala. R. Civ. P., and did not enter a summary judgment in favor Rogers. The inclusion of the employment agreement did not, in this case, convert the motion to dismiss into a motion for a summary judgment. Because the employment agreement was attached as an exhibit to GLSA’s complaint, the employment agreement was a part of the pleadings and did not serve to convert the motion to dismiss to a motion for a summary judgment. See Carpenter v. Mobile Cnty., 841 So.2d 1237, 1239 n. 2 (Ala.2002). Our standard of review is, therefore, governed by the following:
“ ‘ “On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.], is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.” ’ ”
Donoghue v. American Nat’l Ins. Co., 838 So.2d 1032, 1036 (Ala.2002) (quoting C.B. v. Bobo, 659 So.2d 98, 104 (Ala.1995), quoting in turn Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993)).
Our supreme court has determined that physicians, veterinarians, and accountants are engaged in professions as that term is used in § 8-1-1. See Friddle, 575 So.2d at 1040 (veterinarians); Burkett v. Adams, 361 So.2d 1, 3 (Ala.1978) (public accountants); Gant v. Warr, 286 Ala. 387, 391, 240 So.2d 353, 355 (1970) (certified public accountants); Odess, 282 Ala. at 396, 211 So.2d at 811 (physicians). The Friddle court set out certain factors that our su *268 preme court finds relevant to the inquiry whether a person is engaged in a profession:
“In Odess v. Taylor, 282 Ala. 389, 211 So.2d 805 (... 19[68]), this Court stated several relevant factors to be considered in resolving the issue as to what constitutes a profession: professional training, skill, and experience required to perform certain services; delicate nature of the services offered; and the ability and need to make instantaneous decisions. In addition, the Court quoted the following excerpt from the late Dean Roscoe Pound’s work, The Lawyer From Antiquity To Modem Times:
“ ‘ “There is much more in a profession than a traditionally dignified calling.
“ ‘ “The term refers to a group of men pursuing a learned art as a common calling in the spirit of a public service — no less a public service because it may incidentally be a means of livelihood. Pursuit of the learned art is the purpose. Gaining a livelihood is incidental, whereas, in a business or trade it is the entire purpose. ...’”
“Odess v. Taylor, 282 Ala. at 396, 211 So.2d at 812.”
Friddle, 575 So.2d at 1039-40. The opinion in Friddle relies on the fact that the practice of veterinary medicine is governed by Ala.Code 1975, § 34-29-60 et seq. (Title 34, Chapter 29, Article 4), specifically, § 34-29-62, which declares that “the right to practice veterinary medicine is a privilege conferred by legislative grant to persons possessed of the personal and professional qualifications specified in this article.” See Friddle, 575 So.2d. at 1040. Thus, the Friddle court concluded that veterinarians are professionals, stating:
“Considering the knowledge, skill, and education required of licensed veterinarians, as well as their duty to promote the public health, safety, and welfare of the State of Alabama, we consider it apparent that the legislature intended that persons licensed to participate in the practice of veterinary medicine be considered professionals. Section 34-29-62. It is likewise our view that persons who practice the science of veterinary medicine are members of a profession.”

Id.

In Burkett, which extended the “profession” designation to include public accountants in addition to certified public accountants, our supreme court stated that it could “see no reason to prevent deeming public accounting ... a profession.” Burkett, 361 So.2d at 3. Although our supreme court noted that certified public accountants were required to take an examination and be licensed and that, “[c]er-tainly, a [certified public accountant] may be entitled, because of such status, to perform services not properly performed by a public accountant,” id. at 3, the Burkett court based its decision on the fact that the record “disclose[d] no difference in the duties and capabilities between the two occupations [i.e., certified public accountants and public accountants].” Id. at 2. In a brief opinion concurring specially, Chief Justice Torbert stated that he did not believe that a statutory procedure requiring certification and licensing or a reference in a statute characterizing a particular occupation as “professional” would bind the court when considering whether a particular occupation was, in fact, a profession. Id. at 3 (Torbert, C.J., .concurring specially).
In Dobbins v. Getz Exterminators of Alabama, Inc., 382 So.2d 1135 (Ala.Civ.App.1980), this court relied on Chief Justice Torbert’s observations in Burkett when we determined that exterminators *269 were not engaged in a profession. The exterminators had argued that, pursuant to Ala.Code 1975, § 2-28-3, they should be designated as professionals because, in granting the Commissioner of Agriculture the power to regulate “ ‘persons engaged in professional services or work defined in this chapter,’ ” Dobbins, 382 So.2d at 1137 (quoting § 2-28-3), which included “professional work or services involv[ing] the application of pesticides,” § 2-28-3 ¶ 6, the services performed by exterminators were described as “professional.” See id, This court rejected the argument that the use of the term “professional” in § 2-28-3 equated with the meaning of the term “profession” used in § 8-1-1. Id. We explained:
“Each of them may be professionals in their business in the sense that they may have worthily attained excellence as to knowledge, skill, training, expertise, proficiency and experience in the pest control field; but this would not convert their pest control business into a profession. There are multitudes of businesses, but few professions.”
Id. Accordingly, we concluded that exterminators “are engaged in a business not a profession,” despite the fact that the extermination business is described in § 2-28-3 as “professional.” Id.
No Alabama case other than Odess has analyzed the factors relevant to a determination whether a particular occupation is a profession. Although Alabama caselaw appears to permit summary determination by a court of whether a particular occupation is a profession, see Gant, 286 Ala. at 391, 240 So.2d at 355 (determining that the trial court had properly dismissed a complaint seeking to enforce a nonsolici-tation agreement against a certified public accountant because “[t]here can be no question that the practice of accounting by certified public accountants, as here, is a profession”), we cannot agree that such an approach comports with the requirements for granting a dismissal under Rule 12(b)(6) and our standard of review of a dismissal for failure to state a claim. Instead, we conclude that the inquiry whether a particular occupation is a profession requires evidence relevant to the Friddle factors.
Rogers argues in his brief that the employment agreement and the laws governing securities, alone, prove, that, under the Friddle factors, he is engaged in a profession. He says that the trial court could conclude from a reading of the employment agreement and consideration of the several applicable federal and state statutes that a securities broker must have professional training and skill, that being a securities broker requires handling a client’s delicate financial matters, and that a securities broker is called on to make quick decisions regarding securities. However, the record does not contain evidence, not even Rogers’s own affidavit, that would support a conclusion that the Friddle factors were met. All that we can glean from the complaint and the employment agreement is that securities brokers must comply with securities laws and regulations in purchasing and selling securities and that they are regulated.
A court can take judicial notice of adjudicative facts that are within the common knowledge. See Kmart Corp. v. Bassett, 769 So.2d 282, 286 (Ala.2000) (“A court may take judicial notice of certain facts that are within the common knowledge.”). However, the requirements and the duties of a securities broker are not within the common knowledge. Although Rogers is correct that the trial court, and this court, may take judicial notice of statutes, see Young v. Michael Dwain Mfg., Inc., 504 So.2d 287, 289 (Ala.Civ.App.1986), the fact that several statutes govern the purchase and sale of securities and require *270 the licensing of securities brokers does not, in and of itself, compel the conclusion that securities brokers are engaged in a profession, especially in light of our reliance in Dobbins on Chief Justice Torbert’s remarks in his special concurrence in Burkett.
Based on the sparse information in the record, we cannot agree that there is no set of facts under which GLSA might prevail in its efforts to enforce the nonsolicitation provision of the employment agreement. That is not to say that Rogers may not prove that he is engaged in a profession at a later stage in these proceedings. Accordingly, we reverse the trial court’s judgment dismissing GLSA’s complaint against Rogers, and we remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. See Ala.Code 1975, § 7-8-102, Official Comment ¶ 14, which explains that a "securities broker” is "a person engaged in the business of buying and selling securities, as agent for others or as principal.”